# JOHN ESCHBACH *vs.* CHAS. H. PITTS, Trustee of GEO. E. DONALDSON.

It is the duty of the trustee of an insolvent debtor, to sell the property of the insolvent free and discharged of all liens and incumbrances, reserving the settlement of all priorities and liens, until the final distribution of the fund.

The taxes for paving streets in the city of Baltimore, are imposed on the property and not on the owner, and though a personal action for them may be maintained by the city against the owner, this does not affect the specific liability of the property.

The ordinance of the mayor and city council of Baltimore, of March 9th 1841, authorising the sale of *real* as well as personal property, for the payment of taxes due the city, is a legitimate exercise of the power conferred by the act of 1840, ch. 63, and makes the taxes a *lien* on the *realty*, as much so as a judgment at law ; *per Le Grand, C. J.*

A judgment is a lien on lands, *only because* they are liable to be sold in satisfaction of the judgment : it is the right to make the debt out of the land which creates the lien ; *per Le Grand, C. J.*

There is no principle of limitations, except that recognised in statutes, which limits the duration of a lien, and the statute of limitations of this State applies to actions therein specified and not to liens upon property for payment of taxes.

APPEAL from the Court of Common Pleas for Baltimore city, from an order in insolvency, passed in the proceedings upon the application of Donaldson, for the benefit of the insolvent laws.

The facts agreed upon by the parties are briefly these: A paving tax for the paving of Biddle street in the city of Baltimore was assessed upon the real estate of one Alcock, who subsequently sold the property in fee to Hall, who afterwards leased a part of it to Donaldson. Subsequently, viz., on the 18th of June 1851, Donaldson applied for the benefit of the insolvent laws, and Pitts was appointed his trustee, and on the 16th of July following, sold the said leasehold property for $900, which sale was duly ratified. Under the notice to creditors to file claims, the appellant filed an account for this paving tax of $186.37, which was admitted to be correct, but which it was contended was barred by limitations. This

account was allowed by the auditor in his report of the 17th of December 1851, to which allowance certain other creditors, holders of mechanics' lien on the property, excepted. These exceptions the court (MARSHALL, J.,) sustained, and delivered the following opinion, in conformity with the act of 1849, ch. 88, sec. 4.

"The points decided by me were these: 1st. That the act of 1840, ch. 63, does not make the taxes of the city of Baltimore, a lien upon the real estate upon which the tax is imposed, but simply gives a power to the city to provide by ordinance for the sale of real estate for taxes. The act of 1797, ch. 90, gave the power to sell lands in the counties for taxes, but has not been thought or decided, so far as I have been informed, to have made taxes a lien upon real estate in the counties. On the contrary I have not supposed taxes to be a lien upon real estate, except so far as they are declared to be by act of Assembly of 1843, ch. 208, secs. 6 & 7.

"2nd. I did not suppose that the right to distrain the personal property existed in the collector for payment of taxes due and incurred by Alcock, he having in the meantime sold the property in fee to Hall and Hall leased to Donaldson. Had I thought the personal property of the purchaser from the trustee found on the premises, liable to distress for Alcock's taxes, I should have held the insolvent estate of Donaldson liable for the taxes, but being of the opinion that the purchaser, not holding under Alcock, was not liable to be thus disturbed for Alcock's debt, I saw no equitable reason to charge the insolvent estate with Alcock's obligations.

"3rd. The statute of limitations was relied on. For these reasons I have overruled the allowance of the claim for taxes, and sustain the exceptions referred to in the above statement."

From the order sustaining these exceptions, Eschbach appealed.

The cause was argued before LE GRAND, C., J., EGGLESTON and MASON, J.

*J. Malcolm* and *J. M. Campbell* for the appellant.

The act of 1849, ch. 88, which authorises this appeal, prescribes what questions shall be argued in the appellate court. No point not appearing in the statement or certificate of the judge to have been decided by the court below can be argued here. The question of limitations does not so appear to have been decided, and is therefore out of the case. But suppose it to be an open question. When the trustee sold the property he was bound to discharge the liens upon it. The city at that time had an undoubted power to distrain upon the property for taxes, (act of 1817, ch. 148, sec. 4,) and limitations are therefore out of the case, even if that objection had any foundation in fact, for if the taxes were a lien, limitations is no bar. 6 *Gill*, 58, *Farmers Bank vs. Iglehart.* 10 *Pet.*, 598, *Brent vs. Bank of Washington.* 3 *Gill*, 445, *Dallam vs. Oliver's Exrs.* But we must take it to be true, that the principal of the taxes was due on the 1st of January 1849, for this appears upon the face of the bill which is admitted to be correct. This disposes of the question of limitations, because three years had not elapsed before the filing of the claim.

But the taxes are expressly made a lien, by the act of 1840, ch. 63, and the ordinances, Nos. 13 and 24, of the mayor and city council in pursuance thereof. The act gives the power to *sell* real estate for the payment of taxes, and makes the city authorities, so to speak, a sheriff to execute this power. If these taxes were a lien upon the estate in the hands of Alcock, they were so upon the same property in the hands of his alienee, for if there be any thing in a lien it cannot be defeated by alienation. The question then is, were the taxes a lien upon the property in the hands of Alcock? The principle is, that the city stands in the same relation to the property that a judgment creditor would. Now how does a judgment creditor get a *lien?* It results *solely* from his right to *sell* the land to pay his judgment. It was the consequence of the right to sue out an *elegit.* 4 *Pet.*, 136, *United States vs. Morrison.* 5 *Pet.*, 367, *Taylor vs. Thomson.* 3 *G. & J.*, 359, *Hanson vs. Barnes.* 8 *G. & J.*, 38, *Miller vs. Allison.*

10          v. 6

The lien attaches to the land, the ordinance makes it a lien on every estate or interest in the land. If this is so limitations cannot bar it. Where do you get limitations from except from the statute? But the statute does not apply to liens, it only bars *actions at law*, and is only adopted by analogy in courts of law. No one ever supposed limitations was a bar to a *distress*, because we do not go into a court of law to enforce it. The same rule applies to liens.

*William B. Perine* for the appellee.

The paving of Biddle street was determined upon in April 1848, and on the 6th of July 1848, a warrant was issued to the collector to collect the sums assessed. At that time Alcock was the owner *in fee* of the property. The benefit was to him, it was a debt due by him, and there was a *personal* liability on him to pay it. He remained owner until July 1850, when he conveyed to Hall who owned it in fee till January 1851, when he leased it to Donaldson. Up to this time nothing is heard of this claim for taxes, which was not filed with the trustee until July 1851. Unless it be a lien, therefore, the claim is clearly barred by limitations.

I insist that these paving taxes are not a lien upon the insolvent's estate. If they are, they can only be made so by virtue of legislative authority. The mayor and city council have no right to pass an ordinance constituting taxes a lien upon real estate. I see no such authority in their charter, or in any subsequent legislation. There is none such in the acts of 1796, ch. 68, or 1797, ch. 54, or 1797, ch. 90. The act of 1840, ch. 63, only enables the city to provide for the · speedy collection of taxes, by authorising a sale of the property for that purpose, but it does not constitute the claim in reference to which the sale is made a lien. The same act provides also for the sale of *personal* property, but this cannot give a lien: it will not be pretended, that if Alcock had personal property on the land he could not pass a valid title to it by sale. So it is with real estate. The ordinance No. 13, even suppose the city had power to make the taxes a lien

does not do it, and the ordinance No. 24, only makes them a lien upon the property on which the assessment is made, and this claim therefore can only be a lien on Alcock's estate in the land.

But suppose it be a lien, when is it to terminate? The paving was done in 1848. The taxes are due on the making out of the list and delivery to the collector. They are not a judgment lien, and must be barred by limitations.

Le Grand, C. J., delivered the following opinion.

This is an appeal from the court of common pleas of the city of Baltimore, under the act of 1849, ch. 88.

It appears from the record that Mr. Pitts, as permanent trustee of Mr. George E. Donaldson, an insolvent debtor, sold his leasehold interest in a certain lot of ground in Biddle street, in the city of Baltimore. Against the fund arising from the sale certain claims were interposed, among which, is that of the appellant for the paving of Biddle street. When the paving was done the property belonged to a Mr. Alcock, who subsequently sold it to a Mr. Hall, who leased it to the insolvent Donaldson. Exceptions were filed to the allowance of the claim of the appellant, which were sustained by the court. The appellant insisted, that the claim for the paving tax was a lien on the property which the trustee sold; this was denied by the other creditors, and their view of the matter was concurred in by the learned judge who decided the case below.

By the act of 1805, ch. 110, sec. 7, and the decision in the case of *Alexander vs. Gheislin*, 5 *Gill*, 138, it is made the duty of the trustee of an insolvent debtor to sell the property of the insolvent, free and discharged from all liens and incumbrances, reserving the settlement of all priorities and liens, until the final distribution of the fund. If, therefore, the paving tax is a lien on the property, the appellant is entitled in the distribution of the estate of Donaldson to a priority over the exceptants.

The tax is not imposed on the owner of the property but

on the property. It is true, a personal action against him may be maintained by the city, but this in no manner affects the specific liability of the property. The exigencies of society require there should be a summary mode for the collection of the public revenue, and accordingly, from time to time, the legislature have passed acts authorising the collection of public taxes by sale and distress. The act which particularly bears on this case, is that of 1840, ch. 63. It authorises the Mayor and City Council of Baltimore "to provide by ordinance or otherwise, for the *prompt* collection of taxes due to the city of Baltimore, and to that end may and shall have power to sell *real* as well as personal property, anything in any act or acts of Assembly, to the contrary, notwithstanding." In pursuance of the power thus conferred the Mayor and City Council passed the ordinance No. 13, which was approved March 9th, 1841. The second section provides, where the taxes are not paid within a certain specified time, that it "shall and may be lawful for the collector of the city, and he is hereby authorised and required, after thirty days previous notice by advertisement as aforesaid, to sell to the highest bidder such lot or lots of ground, or such parts thereof, as may be sufficient to discharge the said taxes, costs and charges." The third section of the same ordinance relates more specifically to "paving" tax, and makes it the duty of the collector to enforce the payment of the same.

I regard this ordinance as but a legitimate exercise of the power conferred by the act of 1840, ch. 63. It authorises the sale of *real* as well as personal property. There can be no doubt, that prior to the passage of these laws, personal property found on the premises could be sold for taxes due on the realty, and I regard the act of 1840, and the ordinance of 1841, as designed to give the same control over the realty as was previously possessed in regard to the personalty, which being easily removed, and the parties owning the lot on which the tax was imposed frequently becoming insolvent or removing from out the jurisdiction of the State, the city was subjected to great loss. It was to remedy this evil the

ordinance was passed. I regard, therefore, the tax as a lien on the realty; as much so as though it were a judgment rendered in a court of law. It is true, it is not said in so many words, anywhere in the act of Assembly, nor in this ordinance, that it shall be a *lien*. Nor is it said in so many words in any act of Assembly, that a judgment rendered in a court of law shall be a lien on realty, but it has been so held for a long time in this State and in England. A judgment is a lien on lands, *because*—and for no other reason—the lands are liable to be sold in satisfaction of the judgment. This was the view of the Court of Appeals, in the case of *Miller vs. Allison*, 8 *Gill & Johns.*, 38. The principle being adopted in analogy to the statute of *Elegit*, *Westminster the 2nd*, 13*th Edward* 1, *ch.* 18. Prior to the passage of this statute a judgment was no lien, because until then the land could not be taken in execution. The statute does not point out any particular mode or manner of execution, but simply authorises the debt to be made out of the land. It is this right, however, to make the debt out of the land, which creates the lien. This being so, I can perceive no difference in principle, between an authority in the Mayor and City Council of Baltimore to make the debt out of the land, and the power of a judgment creditor to do the same thing.

But whatever doubt there may be anywhere, as to the effect of the ordinance of 1841, there ought to be none, I think, in regard to the ordinance No. 24, approved March 28th 1843. That ordinance expressly makes the paving tax "a *lien*" on the property.

In regard to the plea of limitations, it may be remarked, that it does not very satisfactorily appear, whether the court held the plea good or not. It is admitted that the claim which is set out in the record is correct, its payment being resisted on grounds independent of its verity. It does not appear from anything in the record when the work was done, and I cannot therefore see whether it was filed within three years or not. But, apart from this, I know of no principle of limitation, except that recognized in statutes which limits

the duration of a lien.  Our statute of limitations applies to actions therein specified, and not to a proceeding like this. Had an action of *assumpsit* been instituted, perhaps the plea of limitations could have been successfully availed of.  In such a case the proceeding would be *in personam*, and it well might be, that the debtor could avail himself of the statute; but where the claim is enforced against the *thing*, I repeat, I know of no principle which limits the duration of the lien, except such as is set out in some statute, or which is adopted in analogy to its provisions.  There is none such applicable to this case.  For these reasons, I am of opinion the ruling of the Court of Common Pleas ought to be reversed and the cause remanded.

By Judges Eccleston and Mason:   We concur with our brother, that the order of the Common Pleas ought to be reversed, but do not think it *necessary* to decide anything in regard to the ordinance No. 13, of 1841.   We think that of 1843 all sufficient for the purposes of this case.

*Order reversed and cause remanded.*