## THE MAYOR AND CITY COUNCIL OF BALTIMORE, vs. THE PROPRIETORS OF GREEN MOUNT CEMETERY.

The charter of a *cemetery company* within the limits of the city of Baltimore, provided that a certain number of acres of land "shall be *forever* appropriated and set apart as a cemetery, which, so long as used as such, *shall not be liable to any tax or public imposition whatever.*" HELD:

That a *paving tax*, for paving a street in front of this property, is *not* embraced in this exemption; the intent of the Legislature was to exempt the property from all taxes or impositions imposed for the purpose of revenue, but not to relieve it from such charges as are inseparably incident to its location in regard to other property.

The word "*tax*" means a burden, charge, or imposition put or set upon persons or property for public uses, but to pay for opening a street in a ratio to the benefit derived from it, is not a "*tax*" within the meaning of an exemption that certain property shall not "*be taxed by any law of the State.*"

The meaning of the words "*tax*" and "*assessment,*" is the same in our laws, and there is no difference between them, whether applied to the opening or paving of a street; in either case they are synonymous.

The imposition of a paving tax is an exercise of the taxing power, and not of the right of eminent domain.

APPEAL from the Superior Court of Baltimore city,

*Assumpsit* by the appellant against the appellees, for the recovery of a *paving tax* imposed by the corporate authorities of Baltimore, upon the appellees, as owners of land fronting on a part of York avenue, in the city of Baltimore. Plea *non assumpsit.* The case was submitted to the court below, (FRICK, J.,) upon a *case stated,* which is sufficiently set out in the opinion of this court, and a *pro forma* judgment rendered in favor of the defendants, from which the plaintiff appealed.

The cause was argued before LE GRAND, C. J., TUCK and MASON, J.

*Geo. M. Gill* and *John Nelson* for the appellant, argued the following points:

1st. That if the defendants are liable for their proportional part of this paving tax, they may be sued in *assumpsit* therefor. 6 *H. & J.*, 393, *Mayor & City Council of Baltimore vs. Howard.*

2nd. The exemption in the charter of the appellee (act of 1837, ch. 164,) from any tax or public imposition, relates to charges or impositions put or set upon persons or property for public uses. It does not relate to a *paving tax*, which is not general or public, but confined to those who own property fronting on the street paved.

What is a paving tax, and what is the process by which a public street is paved in the city of Baltimore? The authority is first given by the act of 1797, ch. 54, sec. 2, which gave the power to the city authorities to *tax particular localities* for the purpose of paving streets *therein.* This was the rule until the act of 1817, ch. 148, sec. 18, which took from the city authorities the power to pave, except upon *the assent of a majority* of the proprietors of the ground in front of which the paving was to be done. Still further restrictions are imposed by the acts of 1832, ch. 57, and 1833, ch. 40. The power to tax for paving is then a *limited* one, dependent upon the action of the owners of property fronting upon the streets. Under the act of 1797, the inquiry in regard to the validity of any such tax was, whether it was for the benefit of the particular locality or not? and the courts decided that the *ordinance* directing the improvement was *evidence* that it was a benefit, and *therefore* the tax was sustainable. The act of 1817, and the subsequent laws, substitute the *assent of the proprietors* for the judgment of the city authorities.

The tax, then, is a *special one,* and contradistinguishable from a public tax, because it enures as a *special benefit* to the parties who are to pay it. If there be no *benefit*, there can be no tax laid, but it matters not whether, *in point of fact*, benefit has been conferred in *particular cases*, but whether, in the *assumption of the law*, the case *has arisen* for the application of the *power*, the exercise of the authority. The *law prescribes* the standard of *imposition*, and fixes the rule of bene-

Mayor and City Council of Baltimore *vs.* Greenmount Cemetery.

fit. 6 *H. & J.*, 392, *Mayor & City Council of Baltimore vs. Howard.*

The language of the charter of the appellees is, that they shall be exempt from "*any tax or public imposition whatever.*" This means exemption from the operation of a charge operating as a *burthen*, not from a *benefit*. The Legislature never meant that they should take the *benefits* and not pay the *equivalent* therefor. The design clearly was, to exempt them from the general public taxes which all proprietors and citizens are bound to respond to for the general purposes of *government*, and not to enable them to enjoy *benefits* at the expense of *their neighbors*. There is no *hardship* in this case; it is said this construction would render the property of the appellees, which was consecrated for the purpose of a burial ground, liable to be *sold* for the purpose of paying this charge, but so would it be liable to be sold for any *other debt* contracted by the corporation. When their charter was granted, the York road was actually opened, and the bed of the road had been laid down on Poppleton's plat as one of the streets or avenues of the city, and this street was therefore liable to be opened and condemned as a public street, upon the application of not less than two-thirds of the proprietors of ground fronting thereon. Act of 1817, ch. 148, sec. 16. The third section of their charter, while it forbids the opening of streets through their property, appropriated for the purposes of a cemetery, expressly says, that the exemption shall be confined to the area east of the York road. It was then in contemplation that the York avenue might be condemned and opened as a public street. The Legislature had no power to pass a law which would make adjoining proprietors pay the taxes due by the appellees. 4 *Gill*, 425, *Mayor & City Council vs. Lefferman.*

But the very questions involved in this case have been repeatedly *decided*, and are no longer open questions. In our own courts, it has been decided by the cases of *Alexander, et al., vs. Mayor & City Council of Baltimore*, 5 *Gill*, 390. *Dolan & Foy, vs. The Mayor & City Council*, 4 *Gill*, 394. (Opinions of Justices *Le Grand and Dorsey.*) *Moale vs. The*

520 MARYLAND REPORTS.

Mayor and City Council of Baltimore vs. Greenmount Cemetery.

*Mayor & City Council of Baltimore*, 5 *Md. Rep.*, 314. See also *Matter of the Mayor of New York*, 11 *Johns.*, 80. *Canal Trustees vs. City of Chicago*, 12 *Illinois Rep.*, 403. *Northern Liberties vs. St. John's Church*, 13 *Penn. State Rep.*, 104. *Bonsall vs. Lebanon*, 19 *Ohio Rep.*, 418. *Gardner vs. The State*, 1 *Zabriskie*, 557. *Shortwater vs. Armstrong*, 9 *Humph.*, 217. *Reed vs. Toledo*, 18 *Ohio Rep.*, 161.

*John H. B. Latrobe* and *John V. L. McMahon* for the appellees.

The charter of the appellee, (act of 1837, ch. 164,) reciting in its preamble that its object is the establishment of a burial ground, which will assure perpetual protection to the remains of deceased friends, as well as the proper preservation of the grounds as a burial place, by its fourth section requires to that end, that at least fifty contiguous acres of the purchase *"shall be forever appropriated and set apart as a cemetery:"* and it then enacts, *"that the ground thus set apart as a cemetery, so long as used as such, shall not be liable to any tax, or public imposition whatever."* And it being conceded in this case that the ground in respect of which the tax in question was imposed, is a part of the fifty acres so set apart and ever since exclusively used as a cemetery, and therefore covered by this exemption, the question is, whether a paving tax imposed by the city of Baltimore is not embraced by that exemption, looking to its terms as well as its declared objects?

In construing the words of that exemption, it must be manifest, that they are entitled to and ought to receive their fullest signification : and that there is nothing, either in the objects of the charter, or in the context of the exemption, which indicates that the words were used in a limited sense, or were only intended to apply to a particular kind or class of taxes or public impositions. On the contrary, there is a clear design to make the words of the exemption comprehend every thing, without exception, which can be justly denominated either a tax or public imposition : as is manifest from the words *"any tax or imposition whatever."* So that it is not any particular

kind of tax or public imposition which the exemption aims at, but every tax and every such imposition, in whatever form it may come. And when we consider that this exemption is granted and continues, only because and so long as the ground exempt is devoted to and used exclusively for the purpose of a cemetery, and is thus rendered unavailable for all other uses, the reasons for the generality of the exemption are at once manifest. In this respect, therefore, the present case is distinguished from some of the decided cases on exemptions, contained in statutes, or in covenants between landlord and tenant, where the general objects of the statute or covenant having relation to taxes of a particular kind, the courts have considered the exemption as having the same relation : or where the statute or covenant has specified for exemption certain taxes, and exempted from others by general words of exemption following such specification, and the court has construed such general words with reference to the specific taxes previously mentioned, and therefore held such general words to relate only to taxes of the same kind or class with those specified. The cases of this description will be seen in the references in the argument of the *Mayor of New York's case,* 11 *Johns.,* 78. But in this case, there is nothing in any way to qualify or restrict the full meaning of the words used, but on the contrary a clear design to comprehend every thing which the words "tax" or "public imposition" can reach.

As to the construction of *statutes* by their words, and the object manifested by the *act itself,* and the force of *general* words in a statute, see 5 *Md. Rep.,* 485, *Alexander vs. Worthington. Ibid.,* 529, 530, 532, 533, *Carman vs. Carman.* 2 *Md. Rep.,* 120, 121, *Allen vs. The Mutual Ins. Co.* 20 *Wendell,* 561, 562, *Waller vs. Harris.* 50 *Law Lib.,* 169. 9 *Law Lib.,* 48. 18 *Maine Rep.,* 313, *Jones vs. Jones.* 12 *Pick.,* 226, *Doane vs. Phillips.* 11 *Clark & Finnelly,* 86, 143, *The Sussex Peerage case.* 6 *Gill,* 296, 297, *Mayor & City Council of Balto., vs. Balto. & Ohio Rail Road Co.*

Nor is there any thing in the exemption in this case to require or warrant the construction that it was only intended

66    v.7

to apply to taxes and impositions already imposed by then existing laws, or only such as were regularly or annually recurring—such as the ordinary State and city taxes: and that it was not intended to reach future or extraordinary taxes and impositions, the imposition of which depended on contingencies. *Future* taxation or imposition was that against which the exemption especially intended to guard: for if nothing more had been designed than to exempt from the then well known and ordinary State and city taxation, very different words would have been used. The exemption from any tax or imposition *whatever* shows most clearly that they aimed at future as well as present, and extraordinary as well as ordinary taxes and impositions. It will also be remembered that in this case the property thus exempted was, at the period when the charter of the appellee was granted, within the limits of the city of Baltimore, and the acts of Assembly and ordinances of the city, which gave and regulated the power to pave streets and tax for the paving, were then in existence, and subjected this property (without the exemption) to the contingent liability to taxation under that power. There was, therefore, a liability to such a tax by force of then existing laws: and this property was then so situated as to be subject to that liability. And surely, with reference to liabilities for public impositions or taxes, existing and known to the law when it makes such an exemption as the present, it cannot be doubted that they are presumed to have been in the contemplation of the Legislature when it made the exemption, and to have been intended to be reached, if the words of the exemption are comprehensive enough to embrace them, and there be no specified exemption. The decided cases fully support these views, and it will suffice to refer for this to the opinion of the court, in *Bleecker vs. Ballou,* 3 *Wendell,* 266, and *Mayor, &c., of New York, vs. Cashman.*

To determine the extent of this exemption, it is then only necessary to enquire what is the true import of these words "tax" or "public imposition?" as every thing that is such is embraced and intended to be embraced. And the first branch

of this enquiry is, is this exemption by the State confined to State taxes, or does it not also extend to such taxation or imposition by the city of Baltimore, as one of the municipal governments of the State? And since the decision of this court in the case of the *State, use of Washington county, vs. The Rail Road Company*, 12 G. & J., 400; 3 *Howard*, 550, as well as in the various tax cases arising under charter exemptions, and especially under the charter of the Baltimore and Ohio Rail Road Company, it cannot be necessary to offer any argument upon this question. These cases certainly establish, that the power of taxation for city purposes, is held by the city as a branch of the State government, and is a public power subject to State control; that where the State, having certainly full control over the taxing power both of State and city, exempts from taxation generally, or public imposition generally, without any thing in the words or context of the exemption to show that she thereby only referred to State taxation, such a general inhibition of taxation, will reach the city as well as the State power of taxation, and alike restrain both; and that a tax or imposition by the city, in the exercise of the municipal power, is properly speaking "a public tax or imposition." And it will not, we presume, be denied that this property is exempt, by the provision of the charter, from the ordinary city tax. 6 *Gill*, 296, 297. 2 *Do.*, 358, *The Phil., Wil. & Balto. Rail Road Co. vs. Bayless.* 1 *Zabriskie*, 557, *Gardner vs. The State.* 2 *Harrison*, 80, *State vs. Berry.* 3 *Do.*, 11, *Camden & Amboy Rail Road Co. vs. Hillegas.*

As then city taxes, and impositions under the municipal authority of the city, are, in their nature, "taxes or public impositions," and therefore falling within the words as well as object of the exemption: the question is narrowed down to the enquiry, "What is there to preclude the application of the exemption to a paving tax?" The source from which the tax or imposition proceeds (the city government,) makes it *public;* and therefore it is only necessary to ascertain if it is not also a tax or imposition. And to this end, it may be

proper to consider briefly the origin and nature of the paving tax in the city of Baltimore, and the manner in which it operates. Before the grant of the city charter, the paving of the streets of Baltimore was regulated by State legislation, and provided for by State taxation, under the acts of 1782, ch. 17, 1789, ch. 45, 1791, ch. 59, and 1792, ch. 21; and by these acts, which placed the paving under the control and direction of the special, or as they were sometimes called, "the street commissioners," the fund to defray the expenses of paving was raised by various specified taxes imposed by the acts themselves, to which was added a limited power in the commissioners to tax for that object, as also to raise money by lottery for same purpose. Upon the incorporation of the city, the State, by the charter of 1796, and the supplement of 1797, confided to the city government the power of determining as to the location and opening of streets, and of making, paving and regulating them, and also the power to pass all ordinances necessary for that purpose. Under these the city government could direct the paving of any unpaved street, with or without the consent of the owners of the adjacent property; nor was there any restriction upon that power until the act of 1817, ch. 148, (see also act of 1832, ch. 57,) which, in its 18th section, prohibits the city from forcing the paving of such a street, "without the written assent of the proprietors of a majority of the ground fronting on such street, or the part thereof to be paved." But still this is a mere restriction, and does not require the city to order the paving, even where such assent is given. The power of deciding that the street shall be paved still resides in the city alone, or the officers appointed under its authority to decide that question. She cannot order it if a majority do not assent; but even with that assent she has still the right to exercise this power or not, according to the judgment of her commissioners appointed for that purpose. The city government is not therefore, under the law of the State, a mere instrument or agent appointed by the law to carry out the will of the proprietors of a majority of the fronting ground: or in other

words, the law does not make the paving of such streets, and the taxation consequent on it, the mere result of the will of the fronting proprietors of a majority of the ground, but leaves it still as the *imposition of a duty upon the citizen by the city government.*

In order to the exercise of these powers by the city government, the charter has also vested in the city a two-fold power of taxation, the nature of which is fully considered and determined by this court, in the cases of the *City vs. Moore & Johnson*, 6 *H. & J.*, 380, 386, and also *Same vs. Hughes*, 1 *G. & J.*, 480. These cases show that the city might, if she pleased, provide for the paving by a general tax on the citizens of the city, as well as by the particular or special power under the charter, of taxing any particular part of the city for paving streets which may appear to be for the benefit of that part. And in reference to this power of taxing a particular part of the city, they, every where in their decisions, style the imposition on such part of the city "a tax," sometimes calling it *"a special tax,"* (6 *H. & J.*, 380,) and at other times *"a local tax,"* (1 *G. & J.*, 494;) and in reference to this special power of taxation they decide, that the power to tax the particular district, and the legality of the tax imposed under it, "do not depend, (to use their own words,) upon whether the paving does or does not in fact benefit the particular district that is taxed, but upon the object, the motive of the city, in causing the paving to be done," (1 *G. & J.*, 492.) Under these powers the city, having adopted the particular mode of taxation, as to the paving of unpaved streets, has provided a uniform mode of exercising it by its ordinances, (see *Rev. Ord. of* 1828, 121, 122; and same in *Rev. Ord. of* 1825, 121:) and a reference to the general regulations there will show, that the expenses of paving any such street, are those provided for by what is not only *there* called "a tax," but is also in its nature "a tax," and not "a mere assessment of ascertained benefits resulting from the improvement." The provisions are, "that a tax shall be levied upon the owner or owners of the property fronting," so as to make the proprie-

tors of the ground on the two sides of the street pay the whole expense of the paving in front of their respective lots. Instead therefore of being an assessment of benefits ascertained by the judgment of commissioners, (as is the case in assessing the expenses of opening streets,) it is a direct imposition of a tax on each front proprietor, of the whole expense of the paving in front of his own lot to the middle of the street: and the city commissioners, instead of assessing the benefits, do nothing more than ascertain the amount of that expense. And it may here be remarked, as showing the distinction between the paving tax, and an assessment of benefits, that the Court of Appeals, speaking of this tax, say: "That it is not a tax imposed by the commissioners, nor could the corporation confer on them such a power, but it is imposed by the ordinance itself; and the assessing and levying of it was only an apportionment of it, a mere matter of figures and calculation, a ministerial act to carry the law into effect, which it was the duty of the commissioners to perform," (6 *H. & J.*, 391.) We have therefore the authority of this court for saying, that notwithstanding the intervention of the commissioners to aacertain the amount, *it is still a tax or imposition imposed by the city itself.*

The tax in question being, then, clearly *a city tax, or imposition flowing from the exercise of its municipal or public authority*, is there any thing in the uses to which the money raised by it is applied, or in the fact that the tax goes to defray the expense of an improvement in front of the payer's own lot, which strips it of its character as a city tax or imposition? Is there any thing in such an use or application inconsistent with the character of a tax or public imposition? If it be said, that a tax is a pecuniary burden imposed on persons or property for some public object, then surely a pecuniary imposition, imposed by public authority, for the paving of the street of a city, ordered and directed by public authority, is for a public object, whatever the incidental result of that improvement to individuals. If it were conceded not to be for such an object, it would be difficult to find the au-

thority of the corporation to impose it: and the fact that the corporation is authorized, under its charter, if it so pleases, to impose a *general* tax on all the citizens, for the paving of any particular street, or part of a street, of itself demonstrates the object to be a public one, for the accomplishment of which a tax may be properly imposed on the whole community within the city. We are aware that there are cases which hold, with reference to what are called street assessments, that the valuation and assessment of benefits by commissioners acting under public authority, are not, strictly speaking, "taxes:" but there is a marked distinction between those cases and the present, which we will briefly advert to. The leading case on that subject is, the *Mayor of New York's case*, 11 *Johns.*, 80, to which, and the cases in 3 *Wendell*, 452, 254, 19 *Wendell*, 681, and the cases stated by the court in 6 *Barbour's S. C. Rep.*, 224, we refer, as showing the character of the assessments, which are there spoken of. By reference to these it will be seen, that the improvement there is made by an assessment of the entire cost of it, and of the actual benefits which any and every individual would derive from it: that if the aggregate of the actual benefits thus assessed to each individual is not equal to the entire cost, then the court will not confirm the report, and the improvement must stop: and that under this assessment of benefits, the commissioners assess upon each individual what, in their judgment, is the actual amount of the benefit he will derive from the improvement, and thus make him pay only what, in their judgment, is thus actually added to the value of his property. And of such an assessment the court say, (11 *Johns.*, 80,) "But to pay for the opening of a street in *a ratio* to the benefit or advantage derived from it, is no burden. It is no talliage or tax within the meaning of the exemption, and has no claim to public benevolence; why should not the real estate of a minister, as well as of other persons, pay for such an improvement in proportion as it is benefited." And if that were the kind of imposition in this case, this cemetery company, instead of paying this large assessment upon the property, being the whole

expense of the paving in front of its one thousand four hundred and forty-three feet, to the middle of the street, would, in all probability, have paid nothing, or, at least, but a small proportion of the cost of the improvement; inasmuch as the property being, by the charter, *forever* dedicated to the uses of a cemetery, is necessarily valueless for other purposes, and can, therefore, derive but little, if any benefit, when compared with that of those who own lots which may be built upon, or applied to any other profitable uses.   The very cases referred to, strikingly illustrate this distinction.  In the case from 11 *Johns.*, 80, where the question was as to the assessment of church property, the court say, that such property, being devoted *exclusively to religious purposes*, the benefit must be small, in comparison with that of other property; and after speaking of some benefits which might be derived to it by giving more convenient access to it, &c., they say that these are small and remote benefits, and that to charge the churches equally with adjoining property, is unreasonable and extravagant, and the report was, therefore, set aside.   And we also invite the court's attention to the cases in 11 *Wendell,* 149, 153, (the case of a cemetery,) as presenting the same views. Here, however, is a case in which the cemetery company, by what is unquestionably a city tax or imposition, are required to pay for the cost of the paving in precisely the same *ratio* as all other owners of property along the street, and without regard to the comparative benefit they may derive from it; and, therefore, the reasoning, which would strip the assessment of the character of tax or imposition, upon the ground that it only makes them pay for the benefits or value actually added to their property, is entirely inapplicable.   And yet, even these cases from New York, so far as they would seem to affirm, that even such an assessment of the actual benefits is not properly a *tax*, are greatly shaken as to this point, if not entirely overthrown, by the recent decision of the Court of Appeals of that State, in the *Mayor of Brooklyn's case,* 4 *Comstock,* 419.   Misled by the decision above referred to, the lower court, in that case, had determined that such mere

local assessments of benefits were not properly taxes, or acts done in the proper exercise of the taxing power; that they could only be justified under the authority to take private property for public uses; and that the assessment in question in that case could not be sustained under the latter power.    6 *Barbour's S. C. Rep.*, 209, 224.    But the Court of Appeals, reversing this decision, affirm that even such an assessment *is a tax* properly so called; and that in the cases in which it had been said that they were not taxes, all that was intended to be said, or could properly be said, was, not that they were not taxes, but that they were not such taxes as were intended to be embraced by the particular exemption under consideration.    And we refer the court particularly to their review of the anterior cases in 4 *Comstock*, 433 to 437.

With regard to these cases from New York, it is further to be observed, (as will appear from the court's review of them in 4 *Comstock*;) that the main point decided was, not that the assessment by public authority was not a tax, but that looking at the manner in which the exemption claimed was given, the place in which it was found, and the matter with which it was connected, the exemption in question was not intended to embrace all taxes, but only particular kinds of tax.    Hence, in the case in 11 *Johns.*, the exemption was found, in a general tax act, relative solely to the public taxes to be collected for the uses of State, county, or town; and the exemption was, therefore, held to refer only to the taxes to which that act related.    And we may add here, that such too was the character of the exemption in *Dolan's case*, 4 *Gill*, 394, which went off in this court upon another ground.    There, too, the exemption was contained in the State tax act of 1841, ch. 23, *which related only to the imposition of direct taxes by the State or city, for State or city uses; and in which the exemptions of that act clearly have reference only to the taxes to be imposed under that act.*    The mere fact of the exemption being found only in such an act, might be, of itself, sufficient to make it but an exemption from the taxes to which that act related; but the words make this obvious.    The 1st section of this

67       v.7

act of 1841, which contains the exemption relied on in *Do-lan's case*, enacts, "that nothing herein contained shall be construed to authorize the assessment or levy of any tax upon," &c., and then specifies the exempt property, so that it is clearly nothing more than an exemption from the taxes provided for by that act. But, in this case, there are no such considerations to control the construction of the words of the exemption, or to deny them their ordinary and proper import. The exemption is not found in a tax act, or any other act which, by its subject matter, or in any other mode, shows that any particular taxes were in the contemplation of the Legislature, or that, in making this exemption, it had reference only to a particular kind or class of taxes, and so far from there being any intention to use the words in a qualified or restricted sense, they are as comprehensive as language can make them, and expressly intended to reach "any tax or public imposition *whatever*," no matter what its kind or class. And it is found, too, in the charter of a company, the declared objects of which, as well as the words of the exemption, manifest that it was intended to have this comprehensive and all-embracing operation. On this subject we refer the court to the case of *The King vs. Scot*, 3 *Term Rep.*, 602, where, in a charter for charitable purposes, there was a somewhat similar exemption, and where, it being contended that the exemption from any manner of public tax, assessment, or charge, only exempted them from the general public taxes, and not from the assessment from the poor's rate, which was a particular local tax, the court affirm that the exemption embraces every imposition which can be called a public tax, and that the poor's rate, although particular and local, was such. This case clearly shows that such an exemption as the present, found in such a charter as ours, is to have its fullest signification.

Such being the comprehensive character of the exemption, it brings us back again to the simple enquiry, "Is this a tax or not?—and to what has been said above on that subject, we may add, that every act and ordinance, relative to such an imposition as this, speak of it as a *tax*, and nothing but a tax.

Mayor and City Council of Baltimore *vs.* Greenmount Cemetery.

In the opinions of this court, above referred to, not only is it every where called a tax, but, in fact, it is imposed, and can only be imposed, under the charter power to tax the particular district, which expressly gives it as a power to tax—and as the only power to impose it is expressly given as a power to tax, it would be singular, indeed, if the imposition under the power is not a tax, and especially where the very ordinances imposing it call it a tax, and impose it as such. And, if the purpose of the tax have any bearing on this question, it cannot surely be maintained, that any tax which public authority imposes to accomplish an object determined upon and directed by itself, is less a tax because the individual taxed may derive some benefit from its application. But there is another view of this question which, as it seems to us, conclusively demonstrates that such an assessment is a tax, and nothing but a tax. By the act of 1840, ch. 63, power is given to the Mayor and City Council to provide, by ordinance or otherwise, "for the prompt collection of *taxes due to the city of Baltimore;*" and under this authority, alone, was the ordinance of the city passed, which directs the sale of property assessed for paving taxes, (ordinances of 1843, No. 44.) The only power here given, is with reference to taxes due the city, and unless the paving tax be a tax due the city, then the ordinance directing the sale for paving taxes was unauthorized. It so happens, however, that the validity of that ordinance has been fully affirmed by a decision of this court at its present term, which, therefore, settles that paving taxes are embraced under the general denomination of taxes due the city. *Eschbach vs. Pitts*, 6 *Md. Rep.*, 71, 76.

But if it were even conceded that the word "tax," in the exemption, did not include such an assessment, there is surely enough in the remaining words to embrace it. These lands are, by it, exempt from any tax whatever, or any public *imposition* whatever, and it is a well settled rule in the construction of statutes, that where words are thus used disjunctively, it is not to be presumed that they mean the same thing and no more, as they would impute to the Legislature the absurdity

of using the latter words only to repeat what was fully expressed by the first. Hence, in the case in 3 *Wendell*, 263, 266, where the tenant had covenanted with the landlord to pay "all taxes, charges, and impositions," and the question came up as to the liability of the tenant, under this covenant, to pay an assessment of benefits under the New York statute, (such as we have described above,) the court say, "these are not words without meaning, nor can we suppose that they are used as synonymous;" and then, after saying that such a mere assessment of actual benefits was not a tax, on the authority of the case above, from 11 *Johns.*, they yet held it to be embraced by the other words of the covenant. In this case there is nothing but a flat imposition, by the ordinances of the city, of one-half of the cost of paving in front of the lot, the commissioners merely ascertaining that cost; and it surely cannot be successfully maintained that such an assessment is not a public imposition, and especially within the meaning of an exemption, which is expressly against any public imposition *whatever*.

LE GRAND, C. J., delivered the opinion of this court.

This case comes before us on an appeal from a *pro forma* judgment, rendered by the Superior Court of Baltimore city on a case stated. The statement of the facts may be thus abbreviated: By the act of 1837, ch. 164, the appellees were incorporated. As a corporation they are seized and possessed, for the purposes mentioned in the charter, of a quantity of land whose western boundary is the York avenue, within the limits of the city of Baltimore. In the year 1851, an application was made by the proprietors of a majority of the feet of ground binding and fronting on the York avenue, in the city of Baltimore, between the north side of Oliver street and the north side of North avenue, in the said city, to have the aforesaid part of the York avenue paved, in conformity with the ordinances of the Mayor and City Council of Baltimore. After notice by advertisement, the proper authorities determined that the avenue, as asked, should be paved, which was accordingly

done in the year 1852; and, in pursuance of the ordinances of the city, a tax was imposed upon the owners of property fronting on the said part of York avenue, equal in amount to the whole expense thereof, excluding the cross-streets, the amount assessed on the appellees being $3790.12. There is no question in the case in regard to the regularity of the proceedings of the corporate authorities of the city; the appellees resting their defence to the claim set up against them exclusively upon the language of their charter, the third section of which provides, that at least fifty contiguous acres of the land of the appellees "shall be forever appropriated and set apart as a cemetery, *which, so long as used as such, shall not be liable to any tax or public imposition whatever.*"

The appellees insist, under this clause of their charter, they are exempt from all liability to pay for the paving in front of their property, alleging that the demand is a "*tax*" and a "*public imposition,*" and being such, they are expressly relieved from all responsibility for the same by the words of the grant to them from the State. The decision, therefore, of the case, depends entirely on the true interpretation of the words which we have quoted from the act of incorporation.

The ordinances of the Mayor and City Council expressly designate, and the Court of Appeals, in the case of *Eschbach vs. Pitts*, 6 *Md. Rep.*, 71, recognize, the levy for paving as a "tax." There is, therefore, no question in regard to the fact of its being such: the only question being, is it such a tax as is within the *meaning* of the act of 1837, ch. 164?

The words, "any tax or public imposition whatever," most certainly are very comprehensive, and would, if strictly construed, apply to every possible form of taxation or imposition, and, as a consequence, necessarily include a paving tax. But, on the fullest consideration, we are unable to satisfy our minds that the statute in question should receive such an exposition. We think the legislature intended nothing more than to exempt the property of the proprietors from all taxes or impositions levied or imposed for the purpose of revenue, and not to relieve it from such charges as are inseparably incident to its location in regard to other property. At the time of the passage of the

act of 1837, the York avenue was designated as a public street, and as such, was liable to be paved within the discretion of the city authorities, on the application of the proprietors of a majority of the feet of the land fronting on it. The effect of words of exemption from taxation has never been decisively settled by the Court of Appeals, although the question was presented in the case of *Dolan & Foy, vs. The Mayor & City Council*, 4 *Gill*, 394. In that, as in this case, the claim was for paving in front of a grave-yard. The appellants there claimed exemption under the 2nd sec. of the act of 1841, ch. 23, which provided, that nothing contained in it should be "construed to authorize the assessment of, or levy of any tax upon, the property belonging to the United States, to this State, or to any county or city within this State, or to any incorporated literary or charitable institution, county schools, houses of public worship, burying-grounds," &c. Baltimore county court, sitting in equity, held that the exemption only extended to public taxes, and not to a release of all liability for benefits conferred; such as might result from the opening or paving of streets. And this view was not only taken in connection with the category in which "burying-grounds" was found in the act, but independently of it and in view of the nature of the thing itself. When the case on appeal came before this court, the decree was, by a majority of the court, affirmed on grounds having no bearing on this question; one of the judges, however, did pronounce on the question, concurring in opinion with the court below. The county court recognized the authority of the case of *The Mayor, &c., of New York*, 11 *Johnson*, 80, as also did this court in the subsequent case of *Alexander & Wilson, vs. The Mayor & City Council*, 5 *Gill*, 396. In the case reported in 11 *Johnson*, the commissioners appointed by the court for the enlarging of Nassau street made a report of the estimate and assessment of the damage and benefit to the parties interested in enlarging the street, by which it appeared that they assessed the benefit of the proposed improvement to certain churches in the city of New York. The churches objected to the assessment, on the ground that they were not liable because of a general law, which provided, "that no real

estate belonging to any church or place of public worship, &c., shall be taxed by *any law* of the State." But the court unanimously decided otherwise, and held that the word "taxes" meant burdens, charges or impositions, put or set upon persons or property for public uses; and that to pay for the opening of a street, in a ratio to the benefit or advantage derived from it, is no burden—is "no talliage or tax *within the meaning* of the exemption." The doctrine of that case has been fully sustained by a number of decisions. See *Bleecker vs. Ballou, 3 Wendell,* 263. *The Northern Liberties vs. St. John's Church,* 13 *Penn. State Rep.,* 104.

But it is said there is a difference between the case reported in 11 *Johnson* and the one now before us; that there it was an *assessment*, whilst here it is a *tax.* That was the case of the *opening* of a street; this is for *paving* of a street. The language of exemption in the New York statute would include just as well the paving as the opening of the street; and if it did not, as was decided, include the latter, it surely did not the other. The language of the New York statute was quite as comprehensive as the act of incorporation of the appellees. It exempted churches, &c., from all taxes imposed by "*any law.*" The distinction, if any, between a *tax* and an *assessment* is not very palpable. The meaning of the words is the same in our laws. When a man is assessed to pay a certain sum, it is equivalent to, and nothing more than, the imposition of a tax on him to that amount. This is the popular understanding of the signification of the terms, as well as that of philologists. Thus, *Webster:* Tax—"a rate or sum of money *assessed* on the person or property of a citizen by government for the use of the nation or State." So, also, "*an assessment* is a valuation made by authorized persons, according to their discretion, as opposed to a sum certain or determined by law. *It may be a direct charge of the tax to be paid.*" In principle, we are unable to discover any difference between the meaning of the words, whether applied to the opening or to the paving of a street. In either case they ought to receive the same exposition; and they are regarded as synonymous by the court in *The People vs. Mayor, &c., of Brooklyn,* 4 *Comstock,* 429,

a case which, it was argued by one of the learned counsel for the appellees, overrules the cases we have cited from 11 *Johnson* and 3 *Wendell.* We do not, however, so understand that decision. For the most part, it deals with matters in no way involved in this case. Its consideration of the provisions of the constitution of New York, of the right to apportion taxes, or of the distinction between the sovereign powers of eminent domain and of taxation, do not concern the question before us. That the imposition of a paving tax is an exercise of the taxing power, and not of the right of eminent domain, we entertain no doubt, nor did we understand the counsel for the appellants to suggest any. There was no question of exemption in the case last referred to. The question there was, whether it was competent to assess on the lands benefited by the grading and paving of a particular avenue the cost of the same? It was contended that the statute authorizing such assessment was unconstitutional, because it confined the assessment to those supposed to be benefited by the improvement. The Supreme Court sustained this objection, but it was reversed by the Court of Appeals, which held the act of the legislature authorizing such assessment to be perfectly constitutional.

Looking to the principles of the cases we have cited, and which have been recognized heretofore by this court, and to the nature of the thing itself, we do not consider this paving tax such a tax as is embraced in the exemption contained in the charter of the appellees. The property of the United States, of the city and county of Baltimore, are all exempted from taxes, and yet it has never, so far as we are informed, been contended that it was not liable for the paving done in front of it, and we can see no reason why that of the appellees should be. If the latter be not responsible, then, it is evident, the street must forever remain unpaved, or the expense of it be borne wholly and entirely by the proprietors of the lots opposite. Surely this never could have been the intention of the Legislature, nor can it be imagined it was its purpose to compel the city generally to do it. It must be viewed practically as a benefit conferred on the property of the appellees, and the mere fact that they were indifferent to it, ought not to

avail in their favor any more than the like indifference of an individual proprietor would shield him from liability to pay his quota when paving is done in front of his ground.

To the objection, that to subject the property of the appellees to liability for paving, would endanger its perpetuity as a cemetery—an object certainly very desirable, and of evident solicitude on the part of the Legislature—it may be replied, that however we may deal in words, there is nothing in this terrestrial sphere which is not liable to shocks and decay, and at some day, sooner or later, to final dissolution.   However, its force, whatever it may be, equally applies to all the engagements and liabilities of the corporation.   The building of a wall, of a church, or the improvement of the grounds, may superinduce debt, and, with it, disastrous consequences. Although fully sympathizing with the laudable spirit which, with pious zeal and watchfulness, seeks to preserve the undisturbed repose of the dead, we, nevertheless, feel ourselves bound to declare, that we see nothing in the legislation of the State, nor in the nature of the demand itself, to exempt the appellees from liability.

*Judgment reversed, and judgment for appellants*
        *for amount mentioned in the case stated.*

