## IN THE MATTER OF COLLEGE STREET.

Exemption from taxation of the estates used for religious or educational purposes does not include assessments made for the improvement of streets under the statute of January, 1854.

The exemption from taxation contained in the charter of Brown University does not include such assessments.

OBJECTIONS to the report of commissioners of assessment upon the widening of College street.

College street, in the City of Providence, had been widened pursuant to the provisions of the statute authorizing the city to lay out, enlarge, straighten, or otherwise alter streets, and to charge one-half of the benefit of such improvements upon the estates in the vicinity thereof. The commissioners had assessed, among other estates, those occupied and owned by Brown University, by the Providence Athenæum, by the Central Congregational Church, and by the First Congregational Society. Objections were made to such assessments by the parties interested, on the ground that these estates were exempt by the provisions of the general law of the State, and by the terms of its charter in the case of Brown University. The statute under which these proceedings occurred, was passed at

the January session, A. D. 1854, of the General Assembly, and was applicable in terms only to the city of Providence. It contained the following provisions in regard to the duties of the commissioners:—

" Said commissioners shall proceed to make a just and equitable estimate and assessment of the amount of the loss and damage, if any, over and above the benefit and advantage, and of the benefit and advantage, if any, over and above the loss and damage, as the case may be, to the respective owners, lessees, parties and persons respectively entitled unto or interested in the lands, tenements, hereditaments and premises so required, by and in consequence of the laying out, enlargement, straightening or other alteration as aforesaid : and a just and equitable estimate and assessment also of the value of the benefit and advantage of such laying out, enlarging, straightening or other alteration as the case may be, to the respective owners, lessees, parties and persons respectively entitled unto or interested in the lands, tenements, hereditaments and premises not required for said laying out, enlarging, straightening or other alterations, but which, in the opinion of said commissioners, will be benefited thereby. And said commissioners shall report thereon to the Supreme Court without unnecessary delay : and whenever the loss and damage shall exceed the benefit and advantage, said commissioners shall estimate, assess and report the excess and surplus only, and whenever the benefit and advantage shall be equal and equivalent to the loss and damage, said commissioners shall report that the owners or parties will suffer no loss or damage, as the benefit and advantage will be equal to the loss and damage. And whenever the benefit and advantage shall exceed the loss and damage as aforesaid, said commissioners shall estimate, assess and report such excess and surplus only. And in all cases where any persons or parties are interested in any real estate or premises not required as aforesaid, but which in the opinion of said commissioners are benefited as aforesaid, it shall be the duty of said commissioners to estimate, assess and report the value of such benefit to such owner or owners, lessee or

lessees, parties and persons respectively, in respect to the said lands, tenements, hereditaments and premises. And said commissioners shall set forth in said report the names of the respective owners, lessees, parties and persons interested in any of the lands, tenements, hereditaments and premises aforesaid, and an apt and sufficient designation or description of the respective lots or parcels of lands and tenements, hereditaments and premises aforesaid, with the loss and damage, benefit and advantage, to each as aforesaid. And the said commissioners shall further apportion and assess such portion of the loss and damage as the city council may direct on application for the appointment of commissioners, not exceeding one-half the loss and damage ascertained as aforesaid, upon the persons and estates so benefited, in the ratio of the benefits conferred, *provided*, that the amount of such assessment shall not exceed the amount of the benefit and advantage ascertained as aforesaid, but in case of such excess, to the extent of such benefit and advantage. And the commissioners shall include said assessment and apportionment in their report aforesaid."

· The provisions of the general statute in regard to exemption from taxation as applicable to this cause are, chapter 37, sec. 2, R. S. of 1857 : " The following property, and no other, shall be exempt from taxation : ' houses for religious worship, houses for school academies and colleges and all the appurtenances thereto belonging, owned by any town, company or corporation, and the land used in connection therewith, so far as the same is held, occupied and used for, and the rents and profits thereof are applied to religious or educational purposes.' "

The provisions in the charter of Brown University relied upon were : " That the college estate, the estates, persons and families of the president and professors for the time being, lying and being within the colony, with the persons of the tutors and students, shall be freed and exempted from all taxes, serving on juries and military service." And the provision, " That this charter of incorporation, and every part thereof, shall be good and available in all things in the law according to its true in-

tent and meaning. And shall be construed, reported and adjudged in all cases most favorably on the behalf and for the best benefit and behoof of the said Trustees and Fellows and their successors, so as most effectually to answer the valuable ends of this useful institution."

The objections were argued by *A. Payne* for the Providence Athenæum, and the Central Congregational Society, and by *Benjamin F. Lapham* for the First Congregational Society, upon the brief filed by *Mr. Lapham:*—

I. Houses of religious worship are exempt from taxation. Statutes, page 104.

II. A tax is a contribution imposed by government upon an individual for the service of the State. 2 Bouvier's Law Dict. page 572.

III. An assessment upon an individual for the lay out and alteration of a street is such a contribution and is a tax.

IV. The act under which this assessment is made makes it a tax, and adds it to the other taxes assessed against individuals, and provides the same means for its collection. City Ordinances, page 52.

The objections were further argued by *T. A. Jenckes* and *Richard W. Greene*, upon the brief of *Mr. Jenckes*, for Brown University:—

I. The assessment for supposed benefits for the improvement is a " *tax.* "

II. By the charter of Brown University, the estate of the corporation is exempt from all taxes.

III. That charter is a contract between the State and the corporation. Case of *Dartmouth College*, 5 Wheaton, 518 ; *Providence Bank* v. *Billings*, 4 Peters, 514; Angell & Ames on Corporations, § 465, *et seq.*

IV. The legislature has no power to pass a subsequent statute creating a new tax, and to subject the estate of the corporation to the payment of it, because such a statute would impair the obligation of the contract expressed in the charter. *Dartmouth College* v. *Woodward.*

V. The reasoning of the court in the case *Love and wife* v.

*Howard* is not applicable to this case, inasmuch as that case called only for the construction of a contract between private parties, and not for the decision of the question of a violation of a contract to which the State was a party. *Love and wife* v. *Howard*, 6 R. I. 116.

VI. The corporation of Brown University has been improperly made a party to these proceedings, and the report should not be confirmed as against them.

The cause was argued for the City of Providence by *James M. Clarke* upon his brief:—

I. The Athenæum, the Central Congregational Society, First Congregational Society, and Brown University, object to the report of the commissioners, because they are not liable to taxes under the law of this State, and because, in addition, the University is exempted by its charter. The City claim that this kind of assessment is not embraced by the law exempting property from taxation. Ch. 37, page 104, Digest. That this exemption only applies to taxes raised for the general purposes of state and town government. That this is a local law, and the assessment is for benefits to their property, and inures to their advantage in the increased value of their estate. That this assessment, if a tax, is an extraordinary tax, and not like the general tax law for the daily want of the State. *In the Matter of Dorrance Street*, 4 R. I. 246. That these parties receive an increased disposable market value to their property by this improvement. If not disposable, this is an element in the assessment. They are bound to make sidewalks adjoining their estates, and have done so always since 1821. See Ord. Prov. 58 ; State Law same, 175. This question has been decided by the Supreme Court of this State in favor of the City upon argument. *Second Un. So. of Prov.* v. *City of Prov.*, 6 R. I. 241. Same decision in New York, upon full argument. *In the Matter of the Mayor of New York for improving part of Nassau street*, 11 Johns. 77. That the charter of the University exempts only for general taxes.

The opinion of the court was given by BRADLEY, C. J. The Athenæum, the Central Congregational Society, the First Con-

gregational Society and Brown University, all object to the allowance of the report of the commissioners in the matter of the widening of College street, upon the ground that by the general law of the State the property of religious and educational institutions, used for those purposes, is exempted from taxation, the terms of the law being as follows: " The following property, and no other, shall be exempt from taxation: "houses for religious worship, houses for schools, academies and colleges, and all the appurtenances thereto belonging, owned by any town, company, or corporation, and the land used in connection therewith, so far as the same is held, occupied and used for, and the rents and profits thereof are applied to religious and educational purposes." And the University claiming an exemption also by the terms of its charter, which are as follows: That "the college estate" "shall be freed and exempted from all taxes." The conclusions at which we have arrived in this case are the result of the authorities upon the subject rather than of our own reasonings. The act under which these assessments were made was copied from the legislation of New York and of other States, and it is to be presumed that our General Assembly intended to adopt the construction put upon these acts by the courts of the States whence they were derived. A decision of the question was many years since made in our own State, and has been since acted upon with the acquiescence of the people and of the law-making power of the State. This court as at present constituted has adhered to the decisions heretofore made, even when not altogether satisfied with the reasons upon which they rest, especially where such decisions are but a construction of the statute law of the State, for if the court had mistaken its meaning, it is to be presumed that the legislature would correct that mistake by subsequent legislation. Nor have we found it necessary to decide whether the doctrine of *Love* v. *Howard*, 6 R. I. 116, that a covenant to pay all taxes, assessments, &c., does not apply to assessments under this law, as the law was of a nature unknown in the State when the covenant was made, is a doctrine applicable to a case like the present. We proceed then to consider these decisions by force of which we have come to our conclusion.

The first case occurred in 1814, in the State of New York, *In the Matter of the Mayor, &c., of New York*, 11 Johns. 77, in which case several churches claimed exemption from an assess-ment of this character, upon the ground that the general tax law declared "that no real estate belonging to any church shall be taxed by any law of this State." The court held that "the word taxes means burdens, charges, or impositions put or set upon persons or property for public uses," "but to pay for the opening of a street in the ratio of the benefit or advantage de-rived from it is no burden." Another case is in 13 Penn. St. 104, *The Northern Liberties* v. *St. John's Church*, decided in 1850. In this case the church claimed exemption from all as-sessments for paving streets, laying pipes, &c., upon the ground of a general law exempting them from city taxes. The court held "that taxes are public imposition levied by authority of the government for the purpose of carrying on the government, and all its machinery and operations." The assessment or charge is an equivalent from the owner for the improvement made to the value of his property. This court, like the court in the 11th of Johnson, inferred from certain acts of the legislature that this distinction between taxes and assessments was intended by the law-making power. Another western case was decided in 1851, 12 Illinois, 403—*Canal Trustees* v. *City of Chicago ;* assessments for widening streets—exemption claimed under a provision against "taxation of every description." The court citing 11 Johns. *Bleecker* v. *Ballou*, 3 Wend. 263, and 13 Penns. St., say that a tax "is a charge upon an estate that lessens its value " ; whereas an " assessment is but an equivalent of compensation for the increased value the property derives from the opening of the streets," and decide against the claim for exemption.

Still another case in the Western States was decided in 1853, 2 Mich. 586, *Lefevre* v. *Mayor of Detroit.* Exemption from as-sessment for paving streets claimed under a general exemption of houses of public worship from taxation. The court criticis-ing the distinction taken in 11th of Johns. between the words taxes and assessements, as having led to embarrassment and confusion, decide the case against the claim for exemption upon

the idea that the exemption in the general law was intended to apply to the kind of taxation provided for in that law. "No good reason," "they say," "is perceived for supposing the legislature intended to extend the exemption further." This decision, in its criticisms upon the 11th Johnson, and in the conclusion at which it arrives, coincides with that of *the People* v. *the Mayor of Brooklyn*, 4 Comst. 420, decided in 1851, a case in which the constitutionality of a street assessment law was maintained upon the ground that it was an exercise of the taxing power. The court in that case necessarily reject the distinction between the words taxes and assessments, which we have quoted in the 11th of Johnson, but they sustain the decision " that a street assessment was not such a tax as the exemption contemplated." All the cases, therefore, concur in the conclusion at which they arrive upon the subject, even where they differ in their reasons for it.

The next case is in New Jersey, 4 Zab. Rep. 385 : *The City of Paterson* v. *Society for Establishing Useful Manufactures*, decided in 1854. This was a claim for exemption from assessment for improvements in streets, upon the ground of an exemption in the charter of the defendant " from all taxes, charges and impositions." The court shortly says : " The taxes, charges and impositions specified are those for public use. The design of the charter was to relieve the corporation from such burdens only."

Another case is found in 7 Maryland Rep. 517 : *The Mayor and City Council of Baltimore* v. *Greenmount Cemetery Co.*, decided in 1855. The exemption from a paving tax was there claimed, upon the ground of a charter exemption from any tax or public imposition whatever. The court overruled the objection, upon the ground stated in the 11th of Johnson, upon which it relies. The next case, and one which gives a more elaborate consideration to the subject than either of the preceding, is in 3 Dutcher's Rep. 186 : *State* v. *City of Newark*, decided in 1858. The exemption claimed in this case was from an assessment for opening and widening streets, upon the ground of a charter exemption from any tax or imposition. The court, after

reviewing the preceding cases, state: "That they deem such an assessment for benefits conferred upon the property of an individual is not a tax," upon the analogy of other statutes whose primary design was the improvement of private property and in which the public interest was merely incidental. But they hold, in the same case, that an assessment for the same purpose upon the Railroad Company, as distinct from an assessment upon its estate especially benefited, is void, as being in fact a tax.

In the *Second Universalist Society* v. *City of Providence*, 6 R. I. 235, our own court decide in regard to assessments upon a religious Society, under the same law and the same exemptions as claimed in the present case, as follows: "They were not collected by virtue of the general tax act, nor are the plaintiffs privileged from them by its exemptions. Such assessments represent, on the theory of the special act which authorizes them, values received from a public improvement by the estate assessed for it. And there is no reason why a religious society should not pay the just price of a special value thus conferred upon its property, as well as any other society or individual." This case was decided in 1859, and does not, either in the argument of counsel or the opinion of court, refer to any of the other decissions we have cited, but they all rest substantially upon the same ground. We have not been referred to, nor have we found, any decisions to the contrary.

It is our duty, therefore, to declare, that assessments made upon estates used for religious and educational purposes for the benefits conferred upon those estates by the opening and widening of streets under this act, provided the assessments do not exceed the benefits, are valid in law. This proviso, or condition as to the validity of the assessment, should be steadily kept in mind in the administration of this law. It is not intended that one-half of the expense of these improvements is to be assessed upon the adjoining estates, but that out of the benefits specially conferred upon them, over and above the benefits they share in common with other property, a contribution as it were should be exacted of them towards the expense of the improve-

ment. The benefit must therefore first be found in point of fact, before the assessment can be made; and the assessment must not exceed the benefit. But these are questions of fact, and if the commissioners have erred in regard to these facts, their report may be corrected in those particulars through the verdict of a jury.

It has been very properly and strenuously urged upon our attention, by the counsel for the University, that the provisions of the charter in regard to taxation cannot be abrogated by leg-lislation except by the consent of the Corporation; and that all the provisions of the charter "shall be construed, reputed and adjudged in all cases most favorable and for the best benefit and behoof" of that institution. But the ground upon which our own court heretofore, and the many other decisions which we have seen have been rendered in other States upon this subject, all proceed is, that the term taxes in general law and in charters, even where coupled with most expressive words, as in the case in Illinois, "taxes of every description," are to be construed as taxes which are simple burdens upon property, and that these terms, when thus employed in clauses of exemption, do not apply to those taxes or assessments, or whatever they may be termed, which are, both in the theory of the law and in fact, but the return of a portion of the benefit specially conferred by the improvement.

From the view that has been taken of this subject by every court which has had occasion to consider it, it will be seen that the decisions turn upon the question as to the construction and meaning of the terms of the statutes and charters, and not at all upon the question of power of the legislature to pass laws inconsistent with charters previously granted. They all hold that the provisions for exemption from taxes or impositions, whether existing in general statute laws or in special charters, are not to be deemed to include assessments for the improvement primarily of certain special localities, and derived from and carved out of the benefits conferred upon those special localities by those improvements. The principle upon which al-these decisions rest, does not authorize any distinction in the

meaning of the same words of exemption when used in a private charter, from that which they have when used in a general statute. The two decisions in New Jersey, the decisions in Maryland and in Illinois, are given upon words used in private charters. We are, therefore, not authorized to make any such distinction in the present case. If, indeed, in view of the many and uniform decisions in this country, including the decision in our own State, we could consider it doubtful whether the law deemed such assessments to be included among the taxes from which this corporation is freed and exempted by its charter, it might be our duty to determine such doubt in favor of the corporation. The law generally requires a strict construction of the privileges of a private corporation when in conflict with general public rights, but the charter of Brown University requires in case of doubt as to the true construction of the charter, that doubt is to be adjudged for the benefit of the Corporation. But that doubt must first exist, before that provision of their charter can be invoked in their behalf. We cannot see that such a doubt exists. It is our duty, therefore, to hold that those who introduced, and have for many years sustained the statute in question, must be presumed to have known the construction put upon analagous statutes in the States whence this was derived, and the construction put upon our own statute in our own courts, and in our practice for many years. If the law is hard or impolitic, or against the tenor and policy of other laws and charters of the State, it is for those to change it in whose power it is to make and unmake the laws of the State. We have no power to do aught else than to declare the law as it is in cases that come before us. We therefore decide that the objections filed by these corporations against these assessments as invalid in law, ought to be and are hereby overruled, and we leave these parties to try the questions as to the proper amount of these assessments in the mode pointed out by the statute, by a jury under the direction of the court.