THE CITY OF DUBUQUE v. THE ILLINOIS CENTRAL RAILROAD CO.

### I.  PER BECK, J.

1. **Taxation:** NATURE OF A TAX.  The liability for a duly authorized tax, lawfully levied, is a debt.

2. **Constitutional law:** TAXATION: RAILROADS.  Chapter 26, Sec. 9, Laws of 1872, by releasing railway companies from the payment of taxes already levied, impairs the obligation of a valid contract, and is unconstitutional and void.

3. **Taxation:** MUNICIPAL CORPORATION: CANNOT BE DIVESTED OF ITS RIGHT TO TAXES.  Although a municipal corporation may be divested of its corporate powers, and they are in no sense vested rights as against the State, yet it may not lawfully be deprived of its right to collect taxes, which have been legally levied.

> *Argument 1.*  A municipal corporation has a private character in which it may acquire property and make contracts.
>
> *Argument 2.*  There is no such distinction as *public rights* and *private rights*, the same rights being common to both corporations and natural persons.  Corporations, however, may be clothed with *powers* which cannot be conferred upon the natural person, and these may be abrogated, while rights cannot.
>
> *Argument 3.*  While the legislature can control the corporate property, its power is limited, in this respect, to the purposes for which the city exists.
>
> *Argument 4.*  A release of municipal taxes, which have already been levied, by a statute which provides for a different kind of taxation, is not a commutation of taxes within legislative authority.

### II.  PER BECK, J., DAY, J., concurring.

4. ——: ——: ——.  The effect of the statute in question, (Chap. 26, Laws of 1872), is to relieve a part of the taxable property of plaintiff from taxation, and thus it is in plain contravention of Art. 8, Sec. 2, and Art. 1, Sec. 6, of the Constitution.

5. **Action:** TAXATION: PRACTICE.  An action at law may be maintained for the recovery of taxes, although the legislature has provided a special remedy therefor.

> 1.  Where the law provides a special remedy, to the exclusion of all others, a different one pursued to judgment cannot be first objected to in the Supreme Court.
>
> 2.  The intention of the legislature to take away the right of action at law, when a new remedy is provided, must be shown otherwise than by the existence of the new remedy.
>
> 3.  The rights of the parties may be adjusted without interfering with the property of defendant, and without the hazard of loss by tax sales.

6. **Taxation:** RAILROADS: ROLLING STOCK. The case of *The City of Davenport v. M. & M. R. Co.*, 16 Iowa, 349, denying the power of a city to tax a railroad company, should not be regarded as having the force of a precedent, since but two members of the bench concurred in the reasoning by which its conclusions were reached.

7. **Res adjudicata:** PRECEDENT. A judgment of this court, based upon diverse views of the law held by the judges, who do not concur in the reasons and principles upon which it should be founded, is not binding as a precedent.

8. ———: ———: ———. The rolling stock of a railway company existing under the laws of another State, but operating in this State, is subject to taxation here.

9. ———: ———: AGENT. It is the duty of the agent or manager of such company to list its rolling stock for municipal taxation.

10. ———: ———: SITUS OF ROLLING STOCK. The *situs* of such property, for the purposes of taxation, is the place where the property of the manager or agent would be taxed, in contemplation of law, it being in his possession, and subject to taxation as his own.

11. ———: ———: OBJECTIONS CONSIDERED. To the objections to the taxation of rolling stock, urged in *City of Davenport v. M. & M. R. R. Co.*, 16 Iowa, 349, it may be answered:

    1. That rolling stock is personal property: the road is real property.

    2. That *Baldwin v. The M. & M. R. R. Co.*, 5 Iowa, 518, and *Richardson v. B. & M. R. R. Co.*, 8 Iowa, 260, relate only to the bringing of suits, and the cases cited in their support do not involve the question of taxation.

    3. That property can be but once taxed, and where the right to tax is established by one city, no other will possess the power.

    4. The Constitution, Art. 8, Sec, 2, subjects to taxation all corporations for pecuniary profit.

### III. PER MILLER, CH. J.

12. **Taxation:** RAILROADS: ROLLING STOCK. The cases of the *City of Davenport v. The M. & M. R. Co.*, 16 Iowa, 33, and of the *Dubuque & Sioux City Railroad Co. v. The City of Dubuque*, 17 Id., 120, have settled the law adversely to the right of a city, which is the principal place of business of a railway company, to subject the rolling stock of the company used in the State, to taxation for municipal purposes. COLE, J., *concurring*.

13. ———: CONSTITUTIONAL LAW. The effect of the statute in question, (Chap. 26, Laws of 1872), is to relieve a part of the taxable property of plaintiff from taxation, and thus it is in plain contravention of Art. 8, Sec. 2, and Art. 1, Sec. 6, of the Constitution.

IV. PER COLE, J.

14. **Taxation**: RAILROAD. A synopsis is given of the various legislative enactments upon the subject of taxation of the property of railway corporations.

15. ———: ———: MUNICIPAL CORPORATIONS. According to the true legislative intent of the statute under which they have been colorably levied, municipal corporations have never had the right to levy taxes upon the property of railway companies within their corporate limits.

16. **Municipal corporations**: POWER OF LEGISLATURE OVER: TAXATION. Municipal Corporations are the creatures of the legislature and can acquire no rights in antagonism to those of their creator. They can possess no vested right in an uncollected tax, authorized by a general law and for a general purpose, which shall deprive the legislature of the right to alter and repeal the general law, thereby defeating the collection of the tax. With respect to private corporations the rule is otherwise, but the doctrine of exemption from legislative authority should not be extended.

17. **Taxation**: REPEAL OF STATUTE. When a statute is repealed, it becomes, with respect to all transactions *in fieri*, as if it had never existed. The repeal of the statute under which the tax in question was levied, defeats its collection.

18. ———: CONSTITUTIONAL LAW. The manifest intent of Sec. 2, Art. 8, of the Constitution, is to place the property of corporations, for the purposes of taxation, like that of individuals, within the legislative power. It does not declare that it *shall* be taxed the same, but only that it shall be *subject to taxation* the same as that of individuals.

> *Argument* 1. The language of the section is not mandatory.
>
> *Argument* 2. If it require the property of corporations to be taxed the same as that of individuals, all revenue laws passed since the adoption of the new constitution would be unconstitutional. But these have been sustained by the courts. (*Faxton v. McCosh*, 12 Iowa, 529).
>
> *Argument* 3. The power to tax implies the power to apportion taxes. Townships and school districts have the same right of objection to the act of 1872 on the ground that it apportions the entire tax to the State and county as have municipal corporations.

19. **Constitutional law**: PROVINCE OF THE JUDICIARY. It is the duty of the courts, if possible, to give to an act of the legislature such a construction as will sustain it. (*Santo v. The State*, 2 Iowa, 265).

20. **Action**: TAXATION. An action at law cannot be maintained to recover a tax for the collection of which the revenue law has made ample provisions.

The City of Dubuque v. The Illinois Central Railroad Co.

*Appeal from Dubuque District Court.*

FRIDAY, JUNE 19.

ACTION to recover the taxes levied by the City of Dubuque for the year 1871, upon the railroad track and right of way, and certain real estate owned and used by defendant within the city limits, and upon coal, oil, and other supplies kept therein, and used in operating defendant's road, and upon the engines and cars, being "the rolling stock" of the road, used upon its lines in the State. By the judgment of the District Court, defendant was held liable for the taxes levied upon the real estate, track and road-bed, except those upon the depot building, which were included in the assessment of property otherwise described in the list of real estate assessed to defendant, and upon the personal property designated as furniture, coal, oil, and supplies, and was discharged from the payment of taxes upon the engines and cars, called "rolling stock." Both parties appeal. The facts of the case are stated in the opinion.

*E. McCeney*, for plaintiff.

*Crane & Rood*, for defendant.

BECK, J.—It was held by this court in *The Dunleith & Dubuque Bridge Co. v. The City of Dubuque*, 32 Iowa, 427, that the property of railroads within the city of Dubuque is liable to municipal taxation the same as other property. The decision in that case was rendered in October, 1871. Subsequently to the assessment and levy of the tax for which the action before us was brought, and after the tax became due and collectible, an act of the legislature was passed containing the following provision:

"Every railroad company which shall have paid all taxes on the gross earnings provided for by Chap. 105 of the Acts of the 13th General Assembly, shall be released from the payment of all other taxes which may have been levied upon the

road-bed, right of way, track, rolling stock and necessary buildings for operating their road, and no taxes for prior years, for State, county, municipal, or any other purpose, for which any tax can be levied under the laws of the State, up to the first of January last, shall be collected from any such railroad company on such property." Laws 1872, Chapter 26, § 9.

Two questions are presented for our decision which arise upon the facts of the case: 1. Is the liability and obligation of defendant for the payment of the tax discharged by the enactment just quoted? 2. Is the rolling stock of defendant used in the State liable to municipal taxation in the city of Dubuque?

I. The first question, which we now proceed to consider, involves the constitutionality of the statute, by the force of which, it is claimed, the taxes sued for are discharged, and are therefore not collectible.

No question is made as to the legality of the assessment and levy of the taxes in question. The lawful power and right of the city to impose them upon the property of defendant was determined in *The Dunleith & Dubuque Bridge Co. v. The City of Dubuque, supra.* The sole question, then, to be determined in this branch of the case is this: Can the legislature discharge the obligation of defendant to pay the tax, as it is attempted to be done by the law in question?

It is first necessary to inquire into the nature of the taxes for which suit is brought. They were levied under the 1. TAXATION: authority of law, and are not different in charac-nature of a tax. ter, as to the obligation resting upon the tax payer to discharge them, from any other legal assessments. As in the case of other taxes, there is a duty resting upon the defendant to pay them, and there is a correlative right of the city to receive and collect them. The law creates this duty and this right. We have here the case of an obligation whereby the defendant is bound to pay the money in suit; the obligation is raised by the law which implies an undertaking of defendant to pay the taxes. The case fills the definition of a contract, a term which, in its more extensive sense, includes

every agreement, obligation, or legal tie, whereby one party becomes bound, expressly or impliedly, to another to pay a sum of money, or to do or omit to do a certain act. Bouvier's Dict., Tit. Contract; Chitty's Contracts, p. 2; 3 Blackstone's Com., 158.

By the lawful levy of the taxes in suit, which were assessed against the defendant, and not *in rem*, defendant became personally bound for their payment. This obligation created a debt in the sense of the term when applied to a liability for the payment of money. This doctrine and the principles upon which it is founded, are supported by the following authorities: *Dugan v. The Mayor*, 1 Gill. & Johns., 499; *The Mayor v. Howard*, 6 Har. & Johns., 383; *Gordon's Ex'rs v. Mayor of Baltimore*, 5 Gill., 231; *Ryan v. Gallatin County*, 14 Ill., 78; *Dunlap v. Gallatin County*, 15 Ill., 7; *Mayor etc. of Jonesboro v. McKee*, 2 Yerg., 167; *City of Oakland v. Whipple*, 39 Cal., 112; *The State v. Poulterer*, 16 Cal., 514; *People v. Seymour*, 16 Cal., 352; *Portland Dry Dock & Ins. Co. v. Trustees of Portland*, 12 B. Monr., 77.

The right of plaintiff to the taxes in question and the obligation of defendant to pay them were perfect before the statute under consideration was enacted. Plaintiff had a valid, legal claim against defendant for the amount of the assessment. This claim—a chose in action—was property, and entitled to the same protection from the law as other property. It rested, as we have seen, upon a contract implied by the law, whereby defendant was bound to pay the money in suit to plaintiff. The statute in question deprives plaintiff of this

2. CONSTITU-TIONAL LAW: taxation: railroads.

property by declaring the taxes levied by the city shall not be collected, and by releasing defendant from their payment. It impairs the obligation of the contract implied by the law whereby defendant became bound to pay the taxes, by attempting to relieve defendant therefrom and declaring plaintiff shall not enforce its lawful claim therefor. Here, by a statute, is an attempt to deprive plaintiff of its property without due process of law, and to utterly impair the obligations of a valid contract. The legislature is expressly prohibited by the constitution from

the exercise of such despotic and oppressive power.   Constitution, Art. 1, §§ 9, 21.

The view just expressed is based upon the fact that property held by a municipal corporation, and contracts made with them, are entitled to the same protection of law as those wherein natural persons are alone concerned.   The right of a city to hold property, and the binding nature of obligations entered into with it, cannot be doubted.   Its rights in these respects are protected by the constitutional guarantees above cited.   This doctrine is nowhere denied.

Counsel for defendant, in opposition to these views, assert that a tax is a mere burden or duty, and is not a debt.   In support of this position they cite the following cases:   *The City of Camden v. Allen et al.*; 2 Dutch, 398; *Perry v. Washburn*, 20 Cal., 318; *Pierce v. The City of Boston*, 3, Met., 520; *Lane County v. Oregon*, 7 Wal., 71; *Shaw v. Picket et al.*, 26 Vt., 482; *The People v. Craycroft*, 2 Cal., 243; *Kidder v. Boom Co.*, 24 Pa. St., 193.

It is admitted that the four cases first named hold that liabilities for taxes are not to be regarded as debts in the ordinary sense of the word so far as to authorize actions to be brought for the recovery thereof, or to require them to be considered the proper subjects of set-off, or to bring those levied by state authority within the terms of the statute of the United States, making treasury notes legal tender for debts.   Upon a careful examination of the other cases mentioned above, we do not find that they possess the force claimed for them.   The opinion in *Shaw v. Picket* contains expressions used *arguendo*, which give some color to the claim of counsel that it supports their position.   The rulings upon the points involved in the case, however, do not have that effect. The same remark may be made with more confidence in regard to the other cases.

It may be admitted that the obligation for the payment of taxes will not support an action, when the law provides another remedy, and that taxes are not the subjects of set-off, nor within the purview of the legal tender act; yet it by no means follows that a tax is not a debt in the true sense of the

term, and protected by law as all other property of that character. These matters do not grow out of or inhere in the nature of the obligation, but pertain to the remedy thereon; they do not affect the right of property existing therein, but simply relate to the remedy by which that right may be enforced. It cannot, therefore, be claimed that because of them the right to enforce the collection of taxes is not property.

The language of the cases under consideration used upon this point is indefinite and wanting in accuracy. It is said that liabilities for taxes are not debts " in the ordinary sense of the word," or " within the common understanding of the word." The word debt is defined by Webster to be "that which is due from one to another, whether of money, goods or services; that which one person is bound to pay or perform to another." Certainly this is the " ordinary sense, the common understanding" of the word, which may be accurately applied to liabilities for taxes. The doctrine of the cases under consideration, so far as it tends to deny that the same rights of property attach to liabilities for taxes as to debts generally, is in conflict with principle and authority.

II. It is argued by defendant's counsel that, as the city of Dubuque is a municipal corporation organized for political purposes, its corporate powers may be abridged or entirely taken away, being in no sense vested rights as against the State. It is therefore insisted that the city may be lawfully deprived of the right to collect taxes legally levied. Without contesting the correctness of counsel's premises, it is very plainly to be seen that their conclusion is a *non sequitur*. It must be remembered that a municipal corporation, though a public and political institution, deriving its life and powers from the State, possesses a private and proprietary character and, as such, may acquire and hold property and make contracts. It is protected in its property by the same constitutional guarantees that extend over natural persons, and the restriction upon legislative action impairing the obligation of contracts preserves those made with it. Rights held by it in its last named character are beyond legislative control and interference.

3. TAXATION: municipal corporation.

*The Town of Milwaukee v. The City of Milwaukee,* 12 Wisconsin 93. *The State ex rel. etc., v. Haben* 22 Wis., 660. *Trustees v. Mayor of Aberdeen,* 13 S. & M., 645. *Bowdoinham v. Richmond,* 6 Me. 93, (6 *Greenl.* 112.) *Benson v. Mayor,* 10 Barb 223. Dillon's Municipal Cor. § 39 and authorities cited.

2. A position of Messrs. Withrow, Edmonds and Ransom, counsel for other railroad companies interested in the questions involved in this discussion, demands particular notice because of the able and ingenious manner of its presentation, and the specious character it is made to assume. It is best and most fairly presented by using their own language, which is as follows : " We shall endeavor to show, both upon principle and authority, that the right to levy and collect taxes is a public and not a private right, and that it can in no sense, and in no case, become a private vested right. The principle upon which rests the distinction between public and private rights may be stated as follows : *Rights which may be conferred upon, and exercised by a private person or corporation, may be private when held and exercised by a municipal corporation ; while rights exercised by a municipal corporation, but which can never be exercised by a private person or corporation, are necessarily public.*"

The law as a science is distinguished for its accurate use of words and terms. When this characteristic of the science is lost or disregarded, in legal discussions, confusion follows and erroneous conclusions are likely to be reached. The ingenious substitution of one term for another, or the use of a word out of its true place, often gives a speciousness to an argument that bewilders and is difficult to expose. And this is the fault of the language above quoted, which we will endeavor briefly to point out.

In the first place *rights* are not classified or distinguished as *public* and *private.* No authority makes any such classification. *Wrongs* are distinguished as *public* or *private* and the *relations* of persons may be either *public* or *private.* The legal mind at once grasps the ideas intended to be conveyed by the use of these terms, but it fails to comprehend the

expressions, *public rights* and *private rights*. Rights held by public, political corporations, as to every element inhering therein, which is necessary to create a right, differ in no respect from rights secured by the law to private persons. They differ as to the subjects upon which they operate, and those of the first are more limited in number than those of the second. But it is a misuse of terms to distinguish rights as public and private, thereby implying that the one class differs from the others as to the security guaranteed by the law thereto, or the remedies provided for their deprivation. The right of property is as sacred when held by a public corporation as when secured to a private person. It is true these corporate rights may be subject to control that cannot be exercised over the rights of an individual, but in no case can they be taken away or impaired by any power in the State.

The word *rights* occurring in the passage quoted above is improperly used in place of the term *powers*. By substituting the last named word for the first, the doctrine announced would probably be unobjectionable and find support in the authorities. A public corporation is clothed with the power to levy taxes; such authority cannot be conferred upon a private person. The power may be said to be public. So the corporation may be authorized to acquire property; a private citizen possesses the same power, which, when it is exercised by a public corporation, is properly called a private power. This, and nothing more, is clearly the import of the authorities cited by counsel. See *Bailey v. The Mayor of New York*, 3 Hill, 531; *The San Francisco Gas Company v. The City of San Francisco*, 9 Cal., 468; Dillon on Municipal Cor., § 39, note.

The powers of a public corporation are conferred by the legislature, and may be taken away by the same authority.

In the exercise of these powers, while lawfully possessed, the corporation acquires property. Here, then, is a right brought into existence—a right of property. The right originated in the exercise of lawful power. The power may be taken away, but the right, its offspring, continues to exist. Future rights cannot be acquired under the power, for it can

no more be exercised. Existing rights are not affected by this abrogation of the power.

In the case before us, the city was clothed with power to levy the taxes in suit, and lawfully exercised that authority. The railroad company became bound to the city for the payment of the taxes. This liability, this debt, as we have seen, is property, and beyond legislative interference. The power under which the levy was made may be taken away by the legislature and other taxes may not again be levied thereunder, but the property right in the liability for the taxes already levied remains unimpaired.

3. The property of public corporations may be under the control of the legislature, so far as to direct the uses to which it shall be devoted. The corporation exists for governmental purposes, and the property is acquired to enable it to discharge its functions. It is within the power of the legislature to direct the exercise of corporate powers; to designate the objects for which and upon which such powers may be exercised; to authorize the expenditure of money therefor, and the like. Doubtless in the exercise of this constitutional authority, the legislature may control the expenditure of money by a city. But it must not be forgotten that a restriction is placed upon the exercise of this legislative power, namely: the corporate property can only be used for the public purposes for which the city exists. It cannot be exercised to destroy the property or divert it from public to private use. In the case before us, the property of the city, in the taxes, is destroyed for the benefit of the railroad company. The practical effect of the legislation in question is to take money from the city treasury, which by law, is intended for public purposes, and pay it without any consideration received therefor by the city or the State, to the railroad company.

4. It is insisted that the statute in question simply provides for a commutation of taxes which is within legislative authority. We find it unnecessary to enter into an inquiry as to the exercise of this power, or the extent to which it may be carried. In our opinion the statute does not provide for commutation, but is intended absolutely to release the taxes in suit. To

commute is to exchange; to put one thing in the place of another; to give or receive one thing for another. There can be no commutation unless, for the thing taken, something shall be returned. The statute takes from the city taxes in which it has acquired property, and gives nothing in return. But it is said it authorizes a levy of other taxes in lieu of those released. But these are not taxes to be paid to the city, nor are they for the years for which the released taxes were levied. In lieu of the taxes due the city, not one cent under the law is paid into the State or city treasury. The law simply releases valid taxes without the pretense of any consideration in return. The point, to our minds, demands no further consideration.

III. It is next argued by counsel that the statute in question does not impair the obligation of a contract because the laws which establish municipal corporations are not contracts, and may be repealed and changed at the will of the legislature. The principle of law here stated may be admitted, but it is inapplicable to the case before us. The contract impaired by the statute in question is not a contract between the State and the city, embodied in the laws creating and conferring power upon the latter, but the obligation resting upon defendants to pay the taxes in suit. The case is this: The plaintiff is created by the State, and endowed with power to levy taxes. It becomes, by this legislation, an artificial person, capable of making contracts within the scope of its corporate powers, and enforcing its rights thereunder. In the lawful exercise of its powers it levies the taxes in suit. The law raises an implied contract, binding defendant to pay these taxes. This is the contract which is impaired.

It is true that the legislature may take away the powers conferred upon the city—may destroy its corporate existence, but cannot divest it of property or rights under contracts lawfully acquired. The State, by legislation, may decree the death of the municipality, and may become its executioner, but cannot seize and dispose of its estate at will. The authority of the legislature to take away or abridge municipal powers, by no means carries with it authority to destroy

rights of property, and rights under contracts, acquired while those powers were lawfully possessed and exercised.

IV.   The property of the railroad company, we have seen, was subject to taxation by the city and was not within the class of non-taxable or exempt property.   The levy of the tax released was lawful.   The effect of the legislation under consideration is to relieve a part of the taxable property of the city from a burden lawfully imposed thereon.   The property of plaintiff, if the law be valid, is not subject to taxation the same as that of other property-holders of the State.   The plaintiff is discharged from taxes upon its taxable property, while residents and tax-payers of the city are liable for the assessment upon their property.   It is very evident that plaintiff's property is not taxed the same as that of others.   The statute, in producing this result, is in plain contravention of the State Constitution.   Art. 8, § 2, is in these words: " The property of all corporations for pecuniary profit, shall be subject to taxation, the same as that of individuals."   The language of this provision is so simple and direct that it cannot be made plainer by exposition.   Its obvious meaning is that the property of artificial persons, existing for pecuniary profit, shall be assessed, and taxes thereon levied and collected, for these acts are incidents in rendering property *subject* to taxation, the same as that of individuals.   The same rule of taxation that extends to individuals, citizens, residents, who are tax payers of the State, must be applied to corporations of the character contemplated.   While the explicit language of the provision leaves no room for doubt as to its meaning, the reasons upon which it is based give double assurance of the correctness of our interpretation.   It is essential to the justice of taxation that it be uniform, bearing equally upon owners of all property which is under the protection of the laws of the State.   All not exempt must pay taxes, which are not to be imposed alone or unequally upon particular individuals or classes.   *Warren v. Henly*, 31 Iowa, 31.   If classes or individuals be exempted from taxation, uniformity and equality is destroyed.   This uniformity in taxation is within the purview of Art. 1, § 6, of the Constitution,

which secures uniform operation of all laws and forbids the General Assembly to grant to any citizen or class of citizens special privileges or immunities. The history of corporations for pecuniary profit in this country shows that there long has been a disposition on the part of these artificial persons to seek, and on the part of legislatures to grant, immunities and exemptions from taxation. It has often occurred that their charters provided for total exemption from taxes or for rules of taxation applicable to them, different from those affecting other property holders. Legislation in other forms has been often sought and granted, securing the same end. The law before us, as well as others enacted in this State, bear evidence of the correctness of this statement. Against such legislation, the evils of which existed and were felt when the Constitution of 1857 was adopted, the provision above quoted was aimed. [See Code 1851, § 462.] The end sought and attained thereby is the equal and uniform taxation of the property of all the tax-payers of the State.

The language of the provision must be understood to be mandatory, and not permissive. If it be regarded as permissive only, the provision is nullified. Undoubtedly, without it the legislature could provide for the taxation of the property of corporations the same as that of individuals and justice would so demand. There is no restriction upon the legislative power forbidding uniform taxation or preventing its application to corporations. If, therefore, the language of the section be construed as permissive, it grants no power and imposes no restriction upon the exercise of power, and is rendered meaningless.

The provision is not limited in effect to any particular class or kind of taxes, considered either as to the property upon which they are levied, or the purposes of their imposition, or the branch of the civil government for the support of which they are collected. The language is general and comprehensive. The word *taxation* applies to all assessments for public purposes which are called taxes, and are authorized by law. Municipal taxes are within the language and spirit of the constitutional provision. They are levied for public purposes,

and are authorized by law. The State delegates to the cities its police and civil authority, which is exercised for the protection of property and persons therein. To enable these corporations to exercise the authority thus conferred, the power of taxation is necessary, and for that purpose is granted. Taxation for such purposes is obviously within the purview of the constitutional provision under consideration. *Weeks v. The City of Milwaukee,* 10 Wis., 242; *The City of Zanesville v. Richards, Auditor, etc.,* 5 Ohio St., 589.

The conclusion just announced is supported by considerations of justice, which should always have controlling weight in construing laws, both constitutional and statutory, admitting of conflicting interpretations, in order to arrive at the true intentions of the law-makers, which, in such cases, must be presumed to accord with right. Under the statute involved in this case and the doctrines upon which it is attempted to be supported, the legislature exempts railroad property from municipal taxation,—relieving it by special enactment from taxes lawfully levied. The cities are charged with the duty of giving protection to the property and business of the railroad corporations found and transacted within their limits. In many of them, such property, both real and personal, of vast value, is situated. In some instances many acres of ground, almost in the heart of the cities, are covered with railroad cars and buildings, subject to conflagrations and other causes of destruction and loss. The business houses and dwellings of the people are endangered by proximity to such vast collections of combustible material. The city is charged with the protection of this property from destruction, and expensive machinery must be maintained for that purpose. The personal property of the railroad companies, as well as that carried by them, must be protected from pillage and larceny, and good order must be preserved in the throngs of people that are constantly found about their depots, entailing large outlays for the support of the police force of the cities. These expenses and responsibilities are imposed upon the municipalities for the protection of the property and the rights of the corporations. Taxes levied by the cities upon railroad property, to be

disbursed for these very purposes—the protection of the property itself, are remitted and discharged, and the people are left to bear the whole burden, by the statute under consideration. The result is grossly unjust, and is brought about because the property of railroad corporations is not taxed as that of individuals. It is to be presumed that the framers of the constitution intended by the provision above quoted, to protect the people from the evils and oppression of such legislation.

We have not, in the preceding discussion, intended to convey the thought that taxes upon all property must be levied in the same manner, but that all property must be subjected to taxation for the same purpose. This remark will prevent a misunderstanding of the real point ruled.

V. It is argued that when a statute prescribes the method for the collection of taxes, it is exclusive. By law the taxes in question are collectible by distress and sale of personal property, and by the sale of real property upon which they may be levied. It is therefore claimed that an action at law cannot be maintained to recover them. No such objection was raised by the pleadings, or appears to have been urged in any manner in the District Court. Counsel for plaintiff may possibly be understood to make the point in this court. If they so intend it is done with great brevity and indistinctness. All that is said by them is found in one short paragraph, which is in the following words: " Without statute conferring the power, the city could not collect a tax, either by suit or otherwise." This proposition counsel support by the citation of the following language found in *McInerny v. Reed*, 23 Iowa, 415: "There is an inherent or common law power to enforce a debt proper, as for money lent or services rendered. But there is no such power to enforce the collection of a tax or assessment; there must be a statute." Not another word is found in their brief upon the point.

*5. ACTION: taxation: practice.*

But counsel for other railroad corporations, having cases pending in the courts which involve the validity of taxes levied by other cities, in printed arguments submitted for our consideration, have presented and elaborately argued the proposition.

1. As this question was not made in the court below, and involves a defense that ought, in some form, to have been made there, we cannot consider it. The rule that questions not raised in the court below will not be considered here, is too familiar to demand in its support the citation of our former decisions announcing it.

2. It is not a question which involves the jurisdiction of this court, or of the District Court. Were it of that character it could be interposed in either court at any stage of the case. The District Court has original jurisdiction to entertain all actions for the enforcement of rights, the deprivation of which has its remedy in that way. The ordinary remedy to enforce the payment of money, which a party is under obligation to pay, is by action. The general proposition is true that if one party is indebted to, or in any manner bound to pay, another a sum of money, the latter may maintain an action against the former to recover it. The law may provide a special remedy in certain cases, which the plaintiff is required to pursue to the exclusion of all others; in these an action would not lie. But should an action be brought in such a case and, without objection to the proceeding, be prosecuted to judgment, upon appeal to this court, the objection cannot be first heard here. The reason of the rule is this: The jurisdiction of the court is not taken away, but the party is required to seek under the circumstances, relief elsewhere. The circumstances or facts which require him to pursue the special remedy must be pleaded, or in a proper manner shown to the court entertaining the action, in order to defeat it.

Now the counsel urging the objection under consideration, admit that an action at law may be maintained to recover taxes lawfully levied when the manner of their collection is not otherwise provided for; that is, if there be no special proceedings prescribed by law, an action will lie. They cite many authorities to support this proposition.*

---

* Dillon's Mun. Cor., § 653; *McInerny v. Reed*, 23 Iowa, 413; *Merriam v. Moody's Ex'r*, 25 Iowa, 169; *Dugan v. Baltimore*, 1 Gill. & Johns., 499; *The Mayor v. Baltimore*, 6 Har. & Johns., 383; *Gordon v. Baltimore*, 5 Gill., 236; *Eschback v. Pitts*, 6 Md., 71; *The Mayor etc. v. Proprietors etc.*, 7 Md., 517; *Litchfield v. Vernon*, 41 N. Y., 134; *St. Louis v. Clemens*, 36 Mo., 473; *St. Louis v. De Norse et al.*, 44 Mo., 139; *Bigelow v. The C. & C. Turnpike Co.*, 7 Mass. 203; *Town of Lebanon v. Olcott*, 1 N. H., 340.

3. The proposition admits the jurisdiction of the court, but denies that it may be exercised under the circumstances of the case, viz: when another remedy is provided. Now it is plain that, to defeat an action of this kind, the fact that another remedy is prescribed by law must be pleaded thereto or in some proper way brought to the attention of the court as a defense; otherwise the judgment will be valid. This defense to the action, · for such it is, cannot be first made here. This court has held that, under a statute requiring the assent of the county court to the prosecution of an action against an administrator in the . district, the want of such assent cannot be first .urged upon appeal as an objection to the judgment rendered in such an action. *Elder v. Littler, adm'r*, 15 Iowa, 65. The principles upon which that decision is planted support the views we have just expressed.

Our conclusion is that the objection under consideration, even were it well taken, or had it been made in the District Court, cannot avail him.

4. However, as the objection is elaborately discussed by counsel who are concerned in other cases wherein it is said to arrise, we may with propriety express our views upon the questions involved therein, which we will proceed, briefly, to do.

The ordinary remedy to enforce a liability for the payment of money, is by action. If a debt exist, if one is bound expressly or impliedly by agreement, obligation or legal tie, to pay another a sum of money, an action at law may be maintained thereon. In every case where the obligation is recognized by the law, the remedy is given. This remedy may be taken away and another given by statute. But the mere fact that a new and additional remedy is given will not destroy the common law right of action; either remedy may be pursued by the party seeking the enforcement of his rights. The intention of the legislature to take away the right of action must appear with sufficient certainty, and not by implication from the mere fact that another remedy is provided. We think these general doctrines cannot be denied, and are so familiar that the citation of authorities in their support will not be expected.

A former Chief Justice of this court, in his valuable work upon Municipal Corporations, applying these very doctrines to the question of the right to maintain an action for the collection of taxes, uses the following language : " When the power to levy the tax is plainly given, the right to collect *by suit* should not be taken to be impliedly denied, unless the intention of the legislature, that the special mode prescribed should be the *only* mode, appears with reasonable certainty. If the special remedy is full and adequate, such an intention on the part of the law-maker would be more readily deduced than it would under other circumstances." Dillon on Municipal Corporations, § 653. This quotation is made with more confidence in answer to the positions of counsel because they themselves cite the identical language in their support. It is explicit and forcible, and demands no comment. In the legislation authorizing the levy of the tax in question, nothing can be found authorizing the inference of a legislative intention to take away the remedy by action. Further discussion of principle involved in the question seems unnecessary. It is, in our judgment, supported by the great weight of authority. The following cases, it is believed, fully recognize the rule that actions at law may be maintained to recover taxes though special remedies be provided by statute therefor.

*Mayor v. Howard*, 6 Har. & Johns., 383; *Dugan v. Mayor*, 1 Gill & Johns., 499; *Clemens v. Mayor*, 16 Md., 208; *Ryan v. Gallatin Co.*, 14 Ill., 83; *Dunlap v. Gallatin Co.*, 15 Ill., 7; *City of Oakland v. Whipple*, 39 Cal., 112; *Mayor v. McKee*, 2 Yerg. 187; *The People v. Seymour*, 16 Cal., 334; *The State v. Poulterer*, 16 Cal., 514; *Portland Dry Dock and Ins. Co. v. Trustees of Portland*, 12 B. Monroe 77; *The Dollar Savings Bank v. The U. S.*, 19 Wal., 277.

5. Of the numerous cases cited by counsel representing the railroad corporations, not parties to this suit, we esteem *The City of Camden v. Allen*, 2 Dutch, 398, and some of the Massachusetts cases, to be in point. The others hold that taxes do not bear interest unless it is so prescribed by statute, are not the subject of set off, cannot be taken on execution, and cannot be attached by garnishment ; that a tax collector can-

not sue in his own name to recover taxes without authority of statute; that a suit in equity will not lie to recover for taxes and the like.*

VI. The very case under consideration illustrates the wisdom of the rule we adopt, and its necessity, to the end that speedy and exact justice be done. The collection of the taxes involved therein is resisted by the railroad company, on the ground that they have been discharged by an act of the legislature. This law is claimed by the city to be void, because it is in conflict with the constitution. Here is a grave constitutional question, upon which the very merits of the case depend. If the law be unconstitutional, the taxes are collectible; if valid, they are discharged. Certainly the most zealous of the counsel for the railroad company cannot deny that this grave question is not free from doubt. But, according to their views, it can only be brought before the courts in the State in actions growing out of attempts of the tax collectors to enforce payment of the taxes by distress and sale of personal property or by sale of real estate upon which the taxes are levied. If the statute in question be held constitutional, the collectors in such cases would be trespassers, and liable as such. If it be held invalid, the distress and sale by the collectors would be sustained, and titles originating thereunder would be upheld; thus, as it will be clearly seen, exposing the railroad company to great loss. In either case hardships and absolute injustice would result. But, by determining this grave constitutional question in an action to recover the taxes, these consequences are avoided. The rights of the parties are

---

* *Shaw v. Pecket*, 26 Ver., 482; *Flournoy v. The City of Jeffersonville*, 17 Ind., 169; *Cooper et al. v. The City of Savannah*, 4 Geo., 73; *Pierce v. The City of Boston*, 3 Met., 520; *Lane Co. v. Oregon*, 7 Wal., 71; *Ruddock v. Gordon*, Quincy's Mass. Rep., 58; *The Andover & M. Turnpike Corporation v. Gould*, 6 Mass., 40; *Carpo v. Stetson*, 8 Met., 393; *Packard v. Tisdale*, 50 Me., 376; *The Union Tow Boat Co. v. Bordelon*, 7 La., An., 194; *Kimble v. The White Water Canal Co.*, 1 Cart., Ind., 285; *The N. A. & S. R. Co. v. Connelly*, 7 Port., Ind., 35; *The Indiana Cen. R. Co. v. Oakes et al.*, 20 Ind., 9; *Mason v. K. & P. R. Co.*, 31 Me., 217; *Stowell v. Flagg*, 11 Mass., 364; *Stevens v. Middlesex Canal*, 12 Mass., 466; *Aldrich v. The Cheshire R. Co.*, 1 Foster (21 N. H.), 359; *Colcough v. The N. & N. W. R. Co.*, 2 Head., 175; *Brown v. Beatty*, 34 Miss., 229; *Egerton v. Third Municipality of N. O.*, 1 La., An., 435; *Lowber v. The Mayor, etc.*, 7 Abb., Pr., 248; *Perry v. Washburn*, 20 Cal., 319.

settled without interfering with the property of the railroad company, without exposing officers of the law to vexatious and harrassing suits for damages, and without hazard of the loss of personal or real property by tax sales. Certainly, the true interest of both parties and sound public policy demand that the right of action be sustained by this court. These considerations, it must be presumed, were contemplated by the legislature, and were sufficient reasons, in the exercise of its wisdom, for the preservation of the right of action for the recovery of taxes, while granting a special and more summary remedy. They are sufficient grounds to authorize the presumption, in the absence of an express declaration, of a legislative intention to that effect.

We will not be understood to hold that, in ordinary cases, where no special circumstances exist, taxes may be collected by action. But simply that where the rights of the State, or of the sub-divisions of the State, levying taxes, or the rights and interests of the tax payers, may be better enforced and protected through an action at law to recover taxes, in such a case that remedy may be presumed.

VII. We come to the consideration of the second branch of this case, which involves the liability of defendant for the taxes levied upon the rolling stock. A preliminary statement of a few facts not before mentioned is necessary. The defendant is a corporation, existing under the laws of the State of Illinois, and, during the year 1871, the period for which the taxes in suit were assessed, was operating a line of railroad from Dubuque to Sioux City, with its headquarters for the prosecution of this business in the first named city. The engines and cars of defendant, denominated rolling stock, were used by the defendant in operating its line of railroad between the two cities above mentioned, and were duly assessed at the value of $300,000.

It is claimed that the rolling stock is not liable to taxation, under the decision of this court in *The City of Davenport v.* 6. TAXATION: *The M. & M. R. Co.*, 16 Iowa, 349. It was held railroads; rolling stock. in that case, that the city of Davenport, having power and authority under its charter " to levy and collect

taxes upon all taxable property, real, personal, and mixed, within the city," could not tax a railroad company that kept its principal business office therein and operated a railroad running from within its borders to another point in the State, upon the rolling stock used in operating such railroad. The facts of the case do not differ materially from those of the action before us. The property called rolling stock in each instance, was used all along the lines of the respective roads as business required, the engines and cars passing over the whole length of the roads in the manner that is customary in operating roads of like character.

All of the Justices, in the case referred to, united in holding that the rolling stock of the railroad was not taxable by the city of Davenport, but they assigned different reasons in support of this conclusion. One of the Justices, (Lowe), thought that the rolling stock is a part of the road itself, and not taxable separately therefrom, but was of the further opinion, in which Cole, J., concurred, that the city was not clothed with power to tax the property, either real or personal, of railroads. Wright, Ch. J., and Dillon, J., held that the city could impose taxes upon the property of the railroad situated within its limits, but were of the opinion that the rolling stock was not taxable on the ground, as we understand their opinion, that it was not within the jurisdiction of the city for the purpose of taxation. They concede that it is taxable property, but was not " within the city," so that it was liable to city taxation.

Under the ruling of this court in *Dunleith & Dubuque Bridge Co. v. The City of Dubuque*, the property in question is taxable and subject to municipal taxation, if within the jurisdiction of the city for that purpose. We do not understand that Wright, Ch. J., and Dillon, J., in the case just referred to, express views as to the power of the city to tax the property in conflict with our later decision, but, on the contrary, in full accord with it. But, as a question of law, they held that the property was not taxable by the city, because, in contemplation of law, it was not within its limits. They concurred with the other members of the court in holding the property exempt from taxation on the ground that its *situs*

was not within the city. The points of law then determined
by them, and which controlled their decision, related to the
*situs* of the property. They hold the rolling stock to be per-
sonal property, and not a part of the road itself. Lowe, J.,
holds that the rolling stock is a part of the road, and for this
reason, as we understand his opinion, can have no such *situs*
in the city of Davenport as to entitle said city, " more than any
other town or city through which it passes, to tax the same for
municipal purposes." He further states the position and rea-
sons of the District Court leading to its decision, (Dillon, J.,
then occupying that bench,) which are substantially the same
as announced in the opinion of the other Justices given in the
case. But we do not understand they rest upon the ground
on which he bases his conclusion. Cole, J., while concurring
in the conclusion of Lowe, J., does not reach it by the same
course of reasoning, nor by the application of the same legal
principles. He expresses no opinion upon the questions dis-
cussed by the other Justices as to the *situs* of the rolling
stock, and as to its being a part of the road itself. Upon these
questions of law he gives no opinion. He reaches the conclu-
sion that power to tax the property of the railroad was not
conferred by the legislature upon the city, and he concurs in
no other point made by Justice Lowe, or the other judges.

We have, then, the same conclusion reached by all the
judges, while differing as to the reason and grounds upon
which it is based.

Two Justices hold the property to be taxable, two deny it.
Two unite in holding, as a matter of law, that the property
being transitory in its use, its *situs* was not in the city;
another holds that its *situs* is not there because it is a part of
the road itself; the other expresses no opinion on these ques-
tions, but bases his conclusion on the absence of legislative
authority to levy the tax. Now the question of law which
controlled the decision of Wright, Ch. J., and Dillon, J., was
the doctrine advanced by them in regard to the *situs* of the
property. Lowe, J., does not adopt their view as to this doc-
trine, but advances another whereby he announces still a dif-
ferent rule of law, namely, that the rolling stock, in contem-

plation of law, is a part of the road. That LOWE, J., did not concur in the doctrine of the other Justices as to the *situs* of the property, is made very plain from the fact that he holds it to be a part of the road; if so, its *situs* would be that of the road, namely, in every town, township, and county through which it runs. After making this announcement he could hardly be expected, in the next paragraph, to say that it is not a part of the road; that it is personal property, and that its *situs* was not in Davenport, because it was used along the line of the road.

Now, we repeat that the doctrine of the *situs* of the personal property announced by two members of the court, the rule that the property was a part of the road maintained by another, and the further rule announced by the same Justice, and assented to by the fourth, all pointing toward the same result, concurred in producing the decision that the rolling stock was not taxable. But of these different principles of law, two Justices at most concur in assenting to any one of them. None of the opinions considered alone has the force of a decision of the court, because no one of them is concurred in by a majority of the Justices; taken collectively, they cannot be regarded as binding upon us in the character of a precedent.

Let us inquire what is meant by the term, precedent, and what elements in a case is to be followed under the rule *stare decisis*. It is not the judgment which the court pronounces upon the rights of the parties involved in the suit. A judgment that A. recover of B. $1,000 is not to be cited as a precedent in a subsequent case to support the right of C. to recover the same sum from D., for the judgment is simply a conclusion reached by the application of rules of law to certain facts. We are to look farther in a case than to the judgment to find that which constitutes a precedent. It is found in the rules of law, which are the foundation of a judgment. These rules constitute the formula by which rights of parties are to be determined. When settled by adjudication, courts, under the doctrine *stare decisis*, are required to apply them to subsequent cases. Upon the authority of the decision

The City of Dubuque v. The Illinois Central Railroad Co.

announcing them they are to be taken as correct. When we look to a case which is called a precedent, we search out these rules for application to the facts in dispute before us; the judgment therein constitutes a rule in no sense—it is evidence of the application of rules, legal formulæ, to facts; it is the formal recognition of such rules. A case is to be regarded as a precedent when it furnishes rules that may be applied in settling the rights of parties. These rules are to be discovered in the opinions of the judges, and constitute the reasons for the decision. Lord Mansfield says: " The reason and spirit of cases make law; not the letter of particular precedents." *Fisher v. Prince*, 3 Burrows, 1364. And Lord Holt declares that " the reason of a resolution (judgment) is more to be considered than the resolution itself." *Cage v. Action*, 12 Mod., 294.

It has always been held that a decision of a court, concurred in by less than a majority of the judges, has not the force of a precedent. When there is an equal division of opinion in this court, the decision of the court below stands affirmed. There must be a concurrence of a majority of the judges·upon the principles, rules of law, announced in the case, before they can be considered settled by a decision. If the court be equally divided or less than a majority concur in a rule, no one will claim that it has the force of the authority of the court.

It is of frequent occurrence in this court that two judges, adopting rules that are not recognized by the others, reach thereby con-7. RES ADJU- clusions approved by all. Who would claim that DICATA: precedent. such rules are to be regarded as law announced by this court? Certainly it cannot be claimed, if a decision be reached by the adoption of diverse rules by the different members of the court, that it is to be regarded as authority. We have seen that the rules of law followed in a decision constitute what we call a precedent. If the judges do not agree upon these rules, and less than a majority concur in them, the decision is not authority. Many cases are found where this rule is applied. Thus, in *Woodruff v. Parham*, 8 Wal., 123, the United States Supreme Court refused to follow another

decision of the same court, License Cases, 5 How., 504, remarking that " The separate and diverse opinions delivered by the judges on that occasion, leave it very doubtful if any material proposition was decided, though the precise point we have here argued was before the court and seemed to require solution." So the case of *Forrest v. Kissam*, 7 Hill, 463, was declared in the subsequent case of *People v. Cole*, 43 N. Y., 508, to be of no authority for the reason that the grounds of the different opinions do not accord, and it is therefore impossible to determine upon what principles the decision is planted. In *Mansfield v. Doolin*, 4 C. L., 17, (Irish Reports) a case was not followed as authority because " the judgments of the several members of the court proceeded on different grounds." But a multiplication of authorities is quite unnecessary to sustain a proposition so clearly established by reason and principle.

Now what principle, what rule of law, what legal formula, which may be applied to the rights of the parties in the case before us, was settled in *The City of Davenport v. The M. & M. R. Co.?* We reply, not one. At the risk of repetition, we will state succinctly the principles or rules of law announced in the different opinions:

1. WRIGHT, CH. J., and DILLON, J., hold that the *situs* of the rolling stock is not in the city. They, therefore, hold the city cannot levy taxes upon that property. They do not agree with LOWE and COLE, JJ., in the rules they announce.

2. LOWE, J., holds that the rolling stock is a part of the road, and that as there is no law authorizing the levy of taxes thereon, it is not taxable property. He does not agree with WRIGHT, CH. J., and DILLON, J., in the rule announced by them.

3. COLE, J., concurs with LOWE, J., that the property is not taxable on the ground that there is no enactment to that effect. He makes no other point and announces concurrence with no other view taken by the other judges.

Now but two judges agree upon any one rule announced. That the property is taxable by the city this court has decided in *Dunleith & Dubuque Bridge Co. v. The City of Dubuque*,

*supra.* That question is out of the way. The other rules found in the different opinions are those announced by WRIGHT, CH. J., and DILLON, J., as to the *si.'us* of the property and the other one advanced by LOWE, J., that the rolling stock is a part of the road. Two judges agree to the first; one to the last. In neither case can the rule be considered as supported by the authority of the court. We are not prepared to sanction either of them upon principle.

. We have been thus particular in examining the character and nature of the decision in question to determine whether its doctrines ought to have the force of *res adjudicata.* We confess an obligation to adhere to former decisions of this court, and we will not, except they appear flatly in opposition to legal principles, disregard them. In our opinion, it is quite as important to have the law firmly settled as wisely settled. Oscillating decisions of a court of last resort tend to disturb the tenure of property and the rights of the people, and weaken confidence in the courts. But it will hardly do to push the doctrine of *stare decisis* so far as to bind this court by the opinion of less than a majority of the occupants of its bench at the time. The rules of law announced by the different Justices of this court in *The City of Davenport v. The M. & M. R. Co.,* in our opinion, cannot be regarded as a decision of the court having the force of a precedent.

It, therefore, becomes our duty to determine the questions in the case before us involving the liability of the defendant for the taxes upon the rolling stock upon principle and decisions of other courts, for the question has not been determined here. Of course, we will give due weight and consideration to the reasoning found in the different opinions in *Davenport v. The M. & M. R. Co.* treating upon the question we have now to determine.

VIII. We will first inquire whether the property in question is taxable here, being owned by a corporation existing under the laws of another State, but doing business in this State, and using the property in the prosecution of such business. Upon this point there can be

no doubt, for it is expressly provided by statute that *all property*, real and personal, *within the State*, not exempted by law, is subject to taxation, and "property situated in this State, belonging to any bank or company, incorporated or otherwise, whether incorporated by this or any other State," is expressly enumerated in the list of taxable property. Rev. § 712.

IX. The next inquiry is, where may such property be assessed and taxed? Rev. § 714, provides for the assessment of property in the following paragraph: "Every inhabitant of the State, of full age and sound mind, shall assist the assessor in listing all property subject to taxation in this State ——: ——: of which he is the owner, or has the control or management, in the manner hereinafter directed; the property of * * * * * a body corporate, company, society or partnership, by its principal accounting officer, agent or partner." Section 725 makes other provisions as to the duty of an agent having in his possession or under his control and management, the property of another, to list the same. Section 716 directs that "any person required to list property belonging to another shall list it in the same county in which he would be required to if it were his own;" and § 719 provides that "if the owner resides out of the county, it shall be listed by the agent or person having charge of the same." Section 734 makes it the duty of the assessor "to list each person in his township, and to assess all the property, personal and real, therein."

As we have before remarked, it is settled by a decision of this court, (*Dunleith & Dubuque Bridge Co. v. Dubuque, supra*), that the property in question is taxable under the laws of the State; if it be within the jurisdiction of the city it is subject to municipal taxation. In our opinion the statutory provision, above cited, determines that the property in question is to be listed in the city of Dubuque, and is there taxable. If it is property that may be assessed and taxed for State and county purposes in the township in which Dubuque is situated, and the officers or agents of defendant, whose duty it is to list the property, are taxable for property of like char-

acter in the city, it is very plain that it may be assessed and taxed by the city, for it is in that case " taxable property within its limits."

Now recurring, very briefly, to the character of the property, we remark that it consists of engines and cars used in operating the road throughout its whole length. By this we do not mean that the cars and engines are used continuously at one particular place on the road, but each one is used over the whole line. The property is thus continually in a state of transition, and literally is in continual motion. It has, outside of Dubuque, no place of rest. The person whose duty it is to assess the property, is an inhabitant of the city of Dubuque, for the head quarters of defendant for the management and control of the rolling stock are there. The property, in contemplation of law, is in his possession; as a matter of fact it is under his control. When elsewhere than in the city of Dubuque, it is in motion; if not absolutely so, it is only waiting for an opportunity or occasion to move. These being the facts, it appears to us that the proper manager of defendant's affairs is required to list the property in Dubuque.

X. As a rule of law, the *situs* of personal property is determined by the domicile of the owner. This is true as to questions affecting the sale, distribution, and right of possession thereof. But the doctrine would not relieve such property from taxation under statutes of the character of those of this State above quoted, when the owner is a non-resident, and the property is within the State. This point demands no further attention.

*situs of rolling stock.*

But the doctrine is not without force and application to support the conclusion that the property in question is subject to assessment and taxation by the city of Dubuque. The officer or agent who has control of the property, stands in the place of the owner, and its *situs* for all purposes of taxation, unless otherwise prescribed, is his place of business. *Supervisors of Tazewell Co. v. Davenport*, 40 Ill., 197; *Sangamon & Morgan R. R. Co. v. County of Morgan*, 14 Ill., 163; *British Commercial Life Ins. Co. v. Commissioner of Taxes*, 31 N. Y., 32. The transitory character of the property renders

this view necessary in order to subject it to taxation at all, and that it is not exempt therefrom we have seen, and that it ought to escape just taxation no one will claim.

A resident of the State, owning property which is used in different counties or localities, without its having in any one an actual *situs*, would be taxed thereon in the place of business at which he managed such property. But in case a resident owns personal property actually situated in a county different from his place of residence, he is taxed in the county where the property is found. Such is the effect of Rev., § 717. It contemplates that the property, in order to be taxed out of the county of his residence, shall be in a permanent manner used where it is assessed.

The keeper of a livery stable or the proprietor of a line of stages may have property that is transitory, actually in motion at all times when not necessarily at rest, as demanded by the nature of his animals, or for repairs of his vehicles. The *situs* of such property, for the purpose of taxation, is the place of business of the owner. The rolling stock of defendant is used in the same way, and is governed by the same rules. The manager or agent of defendant for the State, being required to list the property, must do so as though it were his own. His place of business is Dubuque. There his property, were it used in a like manner, would be taxable, and there must defendant's be listed and taxed.

These views, we think, are supported by the following cases: *Hunter v. Supervisors*, 33 Iowa, 376; *The Board of Supervisors v. Davenport*, 40 Ill., 197; *Sangamon & Morgan R. R. Co. v. The County of Morgan, et al.*, 14 Ill., 163; *St. Louis v. Wiggins Ferry Co.*, 40 Mo., 582; *British Com. Life Ins. Co. v. Comm'rs of Taxes*, 31 N. Y., 32; *Sacramento v. California Stage Co.*, 12 Cal., 134; *People v. Niles*, 35 Cal., 282; *Conroe v. Nat. Protection Ins. Co.*, 10 How. Pr., 403; *Hubbard v. Nat. Protection Ins. Co.*, 11 Id., 149; *State v. Haight*, 1 Vroom, 428; *Thorn v. Cen. R. R. Co.*, 2 Dutcher, 125.

XII. We will proceed very briefly to notice the objections to the foregoing conclusion raised in the opinion of the different Justices in *The City of Davenport v. The M. & M.*

*R. Co., supra.* It is first said by Mr. Justice LOWE, "that the rolling stock of a railway is a part and parcel of the road itself." In our opinion this conclusion of law is utterly inadmissible, because it directly contradicts facts, and we know of no legal fiction that will be permitted s᠎ boldly to fly in the face of truth. The rolling stock is personal property; the road is real property. *Sangamon & Morgan R. Co. v. County of Morgan*, 14 Ills., 164. How can the first be a part of the last? The rolling stock is used upon the road. A farmer uses his plows, horses, reapers, etc., upon his farm; the property of all is in one owner, but it could not be thought by any one that this personal property was only a part of the realty. A wagon and team are used upon a turnpike road, and a boat upon a canal; now if, in each case, the property in the vehicle or vessel was held by the proprietors of the road or canal, then it would follow, if the conclusion of the learned and distinguished Justice be correct, that the wagon and horses are a part of the road and the boat a part of the canal! But the position is so obviously untenable that nothing can be said in its refutation of more force than its bare announcement. See the case last cited for an answer to the doctrine.

XII. The conclusion of DILLON, J., and WRIGHT, CH. J., is based upon the ground that if the property is held to be taxable by the city wherein the principal place of business of the corporation is situated, it may be taxed likewise in every other town and city on the line of the road. This result they reach upon the authority of *Baldwin v. The M. & M. R. R. Co.*, 5 Iowa, 518, and *Richardson v. The B. & M. R. Co.*, 8 Iowa, 260, which they cite as holding that the residence of the corporation is all along the road—in every place through which it passes. It is a sufficient answer to this equally inadmissible conclusion to say, that the cases cited in its support relate to the place of bringing suits against corporations, and construe statutes upon that subject. They are not upon the subject of taxation, nor do they involve any question relating thereto.

The argument, that if the corporation may be taxed in the

city wherein are its headquarters, it may therefore be taxed by all other cities through which its road runs, may be answered by the simple statement that property can be but once taxed, and when a right is established to tax by one city, that fact itself is conclusive that no other municipality possesses the power.

It is conceded by all that justice demands all property of the State, not exempt by law, shall be subject to taxation; that no person or class of persons, whether natural or artificial, should escape the burdens of supporting the government. Corporations should have no greater exemptions in the matter of taxation than are extended to every citizen of the State. That such is the spirit and intention of the law we have no doubt. Indeed, the language of the supreme law of the State on this subject is as follows: "The property of all corporations for pecuniary profit shall be subject to taxation, the same as that of individuals." Constitution, Art. 8, § 2. In our opinion, the spirit of this constitutional provision is repeated in the statutes to which we have referred, and we think it was the intention of the legislature that all personal property of railroad corporations, including rolling stock, should be taxed the same as property of like character owned by the citizens of the State.

Our views, as we have expressed them, carry out this spirit and intention which is plainly discovered in the statutes themselves, and, as they are in harmony with right and justice, we are fully satisfied with the conclusions to which they lead us. The judgment of the court in disallowing the tax to the amount of $50 upon the depot building is correct, as the same property is covered by an assessment under another description.

The judgment of the District Court will be affirmed on defendant's appeal, and reversed on the appeal of plaintiff.

AFFIRMED ON DEFENDANT'S APPEAL.

REVERSED ON PLAINTIFF'S APPEAL.

DAY, J., concurs in the conclusions reached in the foregoing opinion. Upon the proposition, however, that the city has a

vested right in the taxes, he expresses no opinion, reaching the same conclusion upon the other line of argument expressed in the opinion.    He holds the section of the statute in question to be unconstitutional and void.

.MILLER, CH. J., concurs in all conclusions except as to the liability of the rolling stock to taxation.    His mind is brought to a concurrence upon the points of the argument by considerations stated in a separate opinion.

COLE, J., dissents *in toto* to the foregoing opinion.    His views are fully expressed by himself.

The judgment upon defendant's appeal is affirmed upon the concurrence of a majority of the court, and affirmed upon plaintiff's appeal by reason of an equal division in the opinions of the judges—BECK and DAY, JJ., holding that on plaintiff's appeal the judgment should be reversed, while MILLER, CH. J., and COLE, J., hold it should be affirmed.*

AFFIRMED.


MILLER, CH. J.—I.  I concur in the conclusion of the foregoing opinion holding the 9th section of chapter 26, Laws of the Fourteenth General Assembly, to be unconstitutional and void.    I base my concurrence upon the single ground that that section, in attempting to release railroad corporations from the payment of city taxes levied upon their property alike with that of individuals within the city limits, is in plain conflict with the second section of Article eight of the State Constitution, which declares that "the property of all corporations for pecuniary profit shall be subject to taxation the same as that of individuals."    My views at more length are stated in *The City of Davenport v. The Chicago, Rock Island & Pacific R. Co*, 38 Iowa, 633.    I do not deem it proper to repeat them here.    Holding the act invalid on this

---

*NOTE.—The arguments of counsel in *The City of Davenport v. The Chicago, Rock Island & Pacific R. Co.*, 38 Iowa, 633, upon points discussed in the foregoing opinion, were considered before the decision in this case. Messrs. D. Rorer, Cook, Richman & Bruning, T. F. Withrow and Edmonds & Ransom submitted arguments for defendant in that case, and J. N. Rogers for plaintiff.

ground, I do not deem it necessary to express an opinion upon the question whether the plaintiff had such a vested interest in the taxes levied upon the property of the defendant within the city, at the time of the passage of the act releasing the same, that the legislature could not constitutionally pass the enactment.

II.    In respect to the question whether the rolling stock of the railroad was subject to taxation by the city authorities and 12. TAXATION : for city purposes, I am of the opinion that the railroads: rolling stock. cases of *The City of Davenport v. The M. & M. R. R. Co.*, 16 Iowa, 348, and *The Dubuque & Sioux City Railroad Company v. The City of Dubuque*, 17 Iowa, 120, have settled the law adversely to the plaintiff.  It seems to me to be impossible to construe those cases as not deciding that the city of Davenport in one case, and the city of Dubuque in the other, had no power to levy taxes for municipal purposes upon the rolling stock of a railroad company which has its principal place of business in the city.   In each case the right to levy and collect such tax was claimed by the city, and in each case the decision denied the power.   In the case first named Lowe, J., in his opinion, says that the court " unite in holding that the plaintiff has no power to tax the rolling stock of said company for revenue purposes, (although upon different grounds.")   Mr. Justice Dillon holds that, in legal contemplation, the railroad corporation does not solely reside " within the city " of Davenport in such a sense as that its rolling stock is taxable therein, but " it is rather to be considered as residing in the counties and places through which the road passes and in which it transacts its business," and he denies the power of the city to tax such property as property "within the city."   Wright, Ch. J., concurred with the opinion of Dillon, J.   Cole, J., held that the legislature had not granted the authority to tax the property of a railroad corporation by an assessment upon its value, or otherwise than in the manner prescribed by section 462, of the Code of 1851, which was through the shares of the stockholders, or under chapter 173, of the Laws of

1862, which imposed a tax of one per cent. on the gross receipts of the road.

While Mr. Justice COLE denied the power to levy any tax whatever upon any of the property of the railroad company, the other members of the court agreed that no authority resided in the city to tax the rolling stock of the company. In the *Dubuque & Sioux City Railroad Comp ny v. The City of Dubuque, supra*, the court, in the opinion per COLE, J., say: "As to the right of the city to levy taxes upon the rolling stock of the plaintiff, this court is a unit, in its agreement with the court below, for the reasons stated in the case of *The City of Davenport v. Mississippi & Missouri Railroad Company*, and the judgment of the District Court thereon is therefore affirmed." The court below held that the City of Dubuque had no power to levy taxes for municipal purposes, upon the rolling stock of the plaintiff which had its principal place of business within the city.

Believing that these cases fairly decide this question as to the power of the plaintiff to tax the rolling stock of the defendant, and since, as an original question, it would not be free from doubt, I am not disposed to overrule them. Following the doctrine there decided, I hold that the plaintiff had no power to levy taxes upon the rolling stock of the defendant, and therefore is not entitled to recover them in this action. In this conclusion Mr. Justice COLE concurs.

III. In regard to the right of the plaintiff to maintain this action for the collection of the taxes to which it is entitled, I express no opinion. The question was not raised in any manner in the court below, and it is not a jurisdictional question that may be raised for the first time in argument in this court. For a further expression of my views on this point I refer to *The City of Davenport v. The Chicago, Rock Island & Pacific Railroad Company, supra*.

COLE, J., *dissenting.*—The real merits of this controversy, as well as the just and legal force of the questions involved in it, and discussed in the several opinions, will be better and more truly and fully apprehended by a statement of a few

facts, in addition to those preceding the opinion of Mr. Justice BECK.

By the Code of 1851, Sec. 462, it was enacted that the "property of corporations or companies constructing canals, railways, plank roads, turnpike roads, and similar improvements is taxed through the shares of the stockholders.    *    *    *    *." It also provided for the manner of enforcing the payment of such taxes; and it also enacted that all property, real and personal, in the State, is subject to taxation.   This statute continued unchanged till 1858, when it was enacted that "the property of corporations or companies constructing canals, railways"    *    *    * etc., "shall be taxed through the shares of the stockholders" *    *    *;   and also provided a supposed more effective manner of enforcing the payment of such taxes.   Sec. 7, Ch. 152; Laws of 1858.   This act also provided that all property in the State, real and personal, shall be listed, assessed and taxed.   Ib., Secs. 11 and 12.   These sections, too, were afterwards re-enacted, and became Secs. 719 and 720 of the Revision of 1860, and are now in force as Sec. 872 of the Code of 1873.

*14. TAXATION: railroad.*

These two acts were the only laws ever enacted in this State for the taxation of railroad property, until the enactment of Sec. 16, Ch. 173 of Laws of 1862, approved April, 8, 1862, and which took effect by publication, April 25, 1862. This act provided for a tax of one per cent. on the gross receipts of each railroad company for each year; that the report of such receipts should be made under oath to the State treasurer, on or before the first day of February of each year, and the taxes should be paid to the State treasurer on or before the fifteenth day of February, after which time they became delinquent, and subject to penalties and interest; that the State treasurer should retain the taxes so paid, and apportion one-half thereof to the several counties through which the road runs, according to the number of miles in each.   The section concludes as follows:   "The tax herein provided for shall be in lieu of all taxes for any and all purposes on the road-bed, track, rolling stock, and necessary buildings for

operating their road. But other property belonging to such company, whether personal or real, shall be taxed as property of individuals in the respective counties in which the same may lie."

This act continued in force till the enactment of Sec. 1, Ch. 196, of Laws of 1868, which took effect, April 28, 1868; and this latter act was the same in substance as the one it amended —it simply required the company to state the number of miles of road in each county, and provided for ascertaining the gross receipts, in case the company failed to report; but it required or levied the same tax, and concluded with the same paragraph as above quoted.

The only other act, respecting the taxation of railroad property, ever passed by the legislature, prior to the one in controversy in this case, was Ch. 106 of Laws of 1870. The first section provides for a report by each railroad, annually, of its gross receipts. The second, for a levy by the state treasurer of a tax on such gross receipts, per mile, of one per cent. on the first $3,00:, two per cent. on the next $3,000, and three per cent. on all over $6,000. The third, that the treasurer may collect the tax, without process, by seizing and selling property. The fourth apportions the tax, one-fifth to the State, and four-fifths to the counties in proportion to the number of miles of road in each. The fifth provides for ascertaining the gross receipts in case the companies fail to report them, and a penalty for such failure, and concludes with the same paragraph as above quoted. The sixth refers to Mississippi and Missouri River bridges, and the seventh repeals all acts inconsistent with it.

After this act was passed, and in October 1871, in the case of *The D. & D. Bridge Co., v. The City of Dubuque,* 32 Iowa, 427, it was held by a majority of this court, (the writer hereof dissenting), that the provision contained in each of the acts and quoted above, to-wit: "The tax herein provided for shall be in lieu of all taxes for any and all purposes on the road bed, track, rolling stock and necessary buildings for operating the road," did not mean "in lieu of all taxes *for any and all purposes,*" but only in lieu of all taxes *for State*

*and county purposes*, and that *municipal taxes* might, in addi-tion thereto, be levied thereon. This construction of the lan-guage of the several statutes was a complete surprise, not only upon railroad companies, the legislature and the people, but also, as it seemed to the writer of this, upon any recognized principle and rule for the construction of statutes.

The legislature which met in January, 1872, and shortly after this decision was made and announced, adopted an act providing an entirely different method for the assessment of this property and the taxation of railroad companies. Ch. 26, Laws 1872. And for the manifest purpose of correcting the error of language used by the legislature, or the erroneous construction placed by a majority of this court upon the lan-guage of the previous acts above quoted, and of effectuating the (to them) known legislative intent in enacting and re-enact-ing the same, they provided as follows: " Sec. 9. Every rail-road company which shall have paid all taxes on gross earn-ings provided for by chapter 106 of the Acts of the Thirteenth General Assembly, (Laws of 1870) shall be released from the payment of all other taxes which may have been levied upon the road bed, right of way, track, rolling stock, and necessary buildings for operating their road, and no taxes for prior years, for State, county, municipal, or for any other purpose for which any tax can be levied under the laws of the State up to the first of January last, shall be collected from any such rail-road company on such property." And, as if to make assur-ance doubly sure, avoid any claim to the taxes under prior laws and remove any doubt respecting their repeal by impli-cation, the legislature expressly repealed such prior laws by enacting:—" Sec. 13. All laws and parts of laws, inconsistent with the provisions of this act, are hereby repealed."

Under these facts and circumstances this action was brought, December 24, 1872, as an ordinary action at law, to recover the municipal taxes assessed by the City of Dubuque in 1871, upon the road bed, right of way, track, rolling stock, buildings and supplies for operating the road. It is conceded that the plaintiff cannot recover, if the act, last above quoted, is valid. The plaintiffs' counsel, therefore, claim and insist that such

act is unconstitutional and invalid; and this, upon two grounds:

*First.* It is claimed by plaintiff's counsel that the plaintiff, the city of Dubuque, has a vested right in the taxes in dispute, of which the legislature cannot deprive it. One very satisfactory answer to this claim is, that it is quite clear, from the legislative history above given, that the plaintiff *never had* any right whatever to levy the taxes, or in or to them when levied, according to the true legislative intent and meaning of the statute under which they were colorably levied. This was abundantly shown by the discussion of the last above act, pending its passage by the legislature. Of the forty odd members in both houses, who were members when the law of 1870 was passed, not one of them professed to have understood it to mean, as interpreted by the majority opinion of this court, but rather to be in lieu of *all taxes;* and this, although many of them opposed by speech, and voted against the enactment of the ninth section above quoted. The whole basis of the plaintiff's claim, then, is a *mistake*—either by the legislature in its use of language, or by this court in the interpretation of the language used. To correct such innocent mistake, ought not to be unconstitutional. And it is not.

But can a city have a vested right in an uncollected tax, authorized by a general law and for a general public purpose, so as to deprive the legislature of the power to alter or repeal that general law, thereby defeating the collection of the tax? The bare statement of the proposition, it seems to the writer, legitimately and necessarily begets a negative answer. Municipal corporations are the mere arms and agencies of the sovereign authority; that authority can create such corporation at its pleasure, and can assume or resume the appointment of its officers, and can modify, change or entirely repeal or destroy their existence. This is and always has been the recognized rule of such corporations. They are public corporations.

As to private corporations the rule has been different. In the great leading case of *The Trustees of Dartmouth College v.*

*Woodward*, 4 Wheaton, 518, the Supreme Court of the United States, following the lead of the attorney for the corporation, who was possessed of the greatest mind ever produced in this nation, and equalled by none in this century, was over-persuaded to adjudge that the granting to certain persons and others of an act of incorporation by the legislative authority, was a contract within the meaning of that clause of the constitution of the United States, which declares that no State shall make any law impairing the obligation of contracts; and therefore the legislature of a State cannot alter or amend such charter or act of incorporation. That case has been followed by every court in this country, and in thousands of cases. It is not here proposed to depart from or assail that decision. But it cannot be denied that the superior capacity of the advocate stamped his interested view indelibly, if not unalterably, upon the jurisprudence of this country. And it has often occurred to me that if the legislature, by a general law, should, (in the absence of any constitutional inhibition), enact that property invested in a particular industry by any and all citizens of the State shall be exempt from taxation, or confer other rights by the enactment of general laws, there could be no question as to the power and right of the legislature to repeal such general law, at its pleasure. And if it could repeal such a law, under which many or all of the people had made investments, it would be passing strange, upon principle, that it could not repeal the like law, if it had limited its application to a few of the people, or less than the whole. And yet the great case cited above, denies the power of the legislature to repeal the law if it applies to only a few. Indeed, it is more or less true of every general law enacted, that many citizens and others make investments of capital or labor, because of, and upon faith in, the stability of such general law. But if no general law could be repealed so as to affect the interests of any who had changed their business or invested their money upon the faith of it and its stability, the entire sovereignty of the State would have been long since exhausted. Disguise it as we may, the practical effect of the Dartmouth College decision is, to exalt the rights of the few

above those of the many. And it is doubtless true that, under the authority of that decision, more monopolies have been created and perpetuated, and more wrongs and outrages upon the people effectuated, than by any other single instrumentality in the government. Acknowledging the binding force of that decision, and the numerous decisions of this court following it, we have no purpose to deny or attempt to overrule it, yet, in full view of it and its damaging consequences, it well becomes us not to extend its doctrine of exemption from legislative authority, to the numberless larger and lesser municipal corporations of the State, many of which have proved themselves very poor governmental agencies, and terribly exacting and bankrupting rulers.

If a municipal corporation may, under any circumstances, as between itself (and not as trustee) and the sovereign power of the State, acquire any vested rights which the latter cannot rightfully control, it certainly cannot have such right in an uncollected tax, levied under a general law, and for general public purposes. It is the sovereign will which authorizes the levy; the municipal corporation is but the creature and agent to collect; and it needs no argument to prove that the agent and creature can acquire no rights in antagonism to those of the principal and creator. It is enough, therefore, that the sovereign legislature has said to the agent municipality, that the taxes are released, and the agent shall not collect.

But, further than this, the legislature has expressly repealed the law under which the tax sued for was levied. It is a well established principle of law, that when a statute is repealed, it must be considered, as to all transactions *in fieri*, closed—as never having had an existence at all. The right or power to still collect the tax, "would be inconsistent with the manifest intent of the legislature, and repugnant to the very words of the statute repealing it." Rev. of 1860, Sec. 29; Code of 1873, Sec. 45.

17. TAXATION: repeal of statute.

*Second.* It is also claimed that section nine of the Act of 1872, which prohibits the collection of taxes, other than those assessed upon the gross earnings, and section thirteen of the same act, which repeals the prior laws including that under

which the taxes in this case were assessed, are unconstitutional, because Section 2, of Article 8, of the Constitution, says: "The property of all corporations for pecuniary profit shall be subject to taxation the same as that of individuals." The language of this section is *not*, that the property of corporations *shall be taxed the same* as that of individuals; but that it "shall be *subject to taxation* the same as that of individuals." The manifest purpose and intent of the section is, to place the property of corporations, just like the property of individuals, completely within the legislative power for the purposes of taxation; so that the legislature could use the same authority and discretion in the enactment of laws for the taxation of the property of corporations, as it could use in the enactment of laws for the taxation of the property of individuals. And the history of this section, in the constitutional convention, shows that the object of it was to place the property of corporations, *then existing*, within the power of the legislature to tax, although in the flood of special legislation, which had preceded the convention, and peculiar incorporation privileges thereby conferred, many corporations had been granted exemption from taxation. The words "now existing or hereafter created," which were at one time incorporated in the section, were afterwards fully and sufficiently embraced in the phrase "all corporations," used in the section as adopted. The sole practical effect of the section is, to clothe the legislature with the authority to subject to taxation the property of corporations, although by the terms of their charters previously granted, they were exempted from taxation. For, by the general sovereign authority elsewhere given the legislature, it had the power to tax all other property; and the language of this section does not *command* the legislature to provide for the taxation of any property, nor direct the *manner* of making any taxation. If the constitutional convention had intended the section as mandatory, they would not have used the language, "shall be subject to taxation," but would have used the language, "shall be taxed the same," which is quite as easy to apprehend and state, and is mandatory in its words. The

*Marginal note:* 18. ——: constitutional law.

fact that the convention resorted to the language used, in and of itself, negatives the idea of any mandatory intent, This negation is further verified by the fact that the very first legislature which convened after the constitution was adopted, and within a few months after the convention adjourned, passed the act approved March 22, 1858, providing for the taxation of the property of corporations through the shares of its stockholders, and not the same as that of individuals.

But, if we give to the language of the section the construction that it is mandatory, and hold this statute to be unconstitutional, then we must hold all our revenue laws unconstitutional which have been passed since the new constitution was adopted; for none of them have provided for the taxation of the property of corporations the same as that of individuals. And this we cannot do, without overruling many of the previous decisions of this court. In *Faxton v. McCosh*, 12 Iowa, 529, § 462 of the Code of 1851, and § 7, Chapt. 152, Laws of 1858, (quoted *supra*) were directly assailed as being unconstitutional; but this court held, affirming the judgment below, that those statutes were constitutional and valid. In the case of *The City of Davenport v. The M. & M. R. Co.*, 12 Iowa, 539, it was also claimed by counsel that these very sections were unconstitutional because of their conflict with this particular section of the constitution under review, section 2, Art. 8, but this court held otherwise. In *Tallman v. Butler County*, 12 Iowa, 531, the same sections of the laws and the constitution were again under review, and they were again held constitutional; and in that case it was held, also, that the lands granted to the railroad company were not liable to taxation as lands; that they could only be taxed through the shares of the stockholders, and, says WRIGHT, J., on page 534: "Taxation is an attribute of sovereighty. The power to tax implies a corresponding power to *apportion such tax as the legislature shall deem proper*. If it is unwisely (not unconstitutionally) exercised, the remedy is with the legislature. No property can be taxed, however, until the law-making power authorizes and requires it to be done, and if it be done in one or in a particular way, that alone can be pursued. It

cannot be done in another." Hence, if the legislature have apportioned the tax levied upon the gross earnings of railroad companies to the State and county revenue, the legislature had that implied power, and it is not competent for this court to declare a law unconstitutional, simply because the tax is so apportioned. Nor can this court say that the tax upon such gross earnings is not the same as that upon individuals. And if it was either more or less, it would not, for that reason, be unconstitutional. *The U. S. Ex. Co. v. Ellyson,* 28 Iowa, 374. To hold section nine, of the Act of 1872, unconstitutional because, if valid, it, in effect, enables the legislature to apportion all the tax upon gross earnings to the two purposes of State and county revenue, and does not also apportion a part to city purposes, is to directly overrule the previous decisions of this court. But, after the cities are thus provided for, by overruling previous decisions and setting aside the rightful legislative authority, why not go further and hold that the claim of the cities is invalid, because the county, township, road and school districts are not also sharers in the tax? Why are the rights of cities to be thus exalted above those of the rural districts? Equality is equity.

But the act of 1872 actually and expressly repeals parts of the prior laws, including that under which the tax in controversy was levied. And the previous decisions of this court cited, show that a tax cannot be levied or collected until the law-making power authorizes it, and in the *way* it is authorized. The legislature have repealed the law authorizing the collection of this tax, and it cannot therefore be collected. But, it is said, the law repealing it leaves the law in force unconstitutional. Very well; but that does not affect the repeal, nor enable the court to re-enact the law repealed. If the law or statute, as it is left, after the repeal of some of its sections or parts, is unconstitutional, the court may so declare it, and it will be inoperative. But, surely, the court cannot re-instate or re-enact the parts repealed so as to patch up the statute and make it constitutional. The right of the legislature to change, modify or repeal the powers conferred upon a municipality, is not questioned, even by the counsel for the city.

The City of Dubuque v. The Illinois Central Railroad Co.

The act of 1872, by its repeal of parts of the prior laws, sim-
ply took away from the city *the power* to collect the tax in
question.

Again, while it is true that courts have the power to declare
an act of the legislature unconstitutional, "its exercise is con-
sidered of the most delicate and responsible nature,
and is not resorted to unless the case be clear,
decisive and unavoidable; it is the duty of the
court to give an act such a construction, *if possible*, as will
maintain it." *Santo v. The State*, 2 Iowa, 165 (*i. e.*, 208),
and cases cited.

19. CONSTI-
TUTIONAL
LAW: duty of
judiciary.

.Further than this, it seems very clear to me, upon both
principle and authority, that an action at law cannot be main-
tained to recover a tax, for the collection of which
the revenue act itself has made ample provisions.
Our revenue laws have uniformly provided the most complete,
speedy, and adequate remedy for the collection of all taxes, by
distress and sale. That remedy was fully open to the plaintiff.
The plaintiff cannot, by the resort to an action at law, deprive
the defendant of the redemption allowed by the revenue law.
If it can be done in this case, it can be done in every case.
There is not a word in the pleadings giving any ground or
reason for the resort to an action at law. Without some such
showing, by both allegation and proof, the action cannot be
maintained. The plaintiff has no right to bring the action;
nor does the showing of a tax levied and unpaid establish a
*debt*, so as to entitle the plaintiff to judgment. The authori-
ties abundantly support this view.

20. ACTION:
taxation.